11 CV 5580 E

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

JUDGE RAKOFF

| | | |
|---|---|---|
| STACEY B. FISHBEIN, on Behalf of Herself and all Others Similarly Situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) | **JURY TRIAL DEMANDED** |
| ALL MARKET INC. d/b/a VITA COCO, | ) ) ) | |
| Defendant. | ) ) | |

RECEIVED
AUG 10 2011
U.S.D.C. S.D. N.Y.
CASHIERS

## CLASS ACTION COMPLAINT

Plaintiff Stacey B. Fishbein ("Plaintiff"), by and through her undersigned counsel, upon personal knowledge as to herself and upon information and belief as to all other matters, alleges as follows:

1.      Plaintiff brings this action against defendant All Market Inc. d/b/a Vita Coco ("All Market" or "Defendant") on behalf of herself and all other similarly situated individuals and entities who purchased "Vita Coco Coconut Water" products (collectively, "Vita Coco Products") in the United States during the period between August 10, 2007 and the date of the final disposition of this action (collectively, the "Class").

## BACKGROUND

2.      Defendant manufactures, markets and sells Vita Coco Products throughout the United States and North America.

U.S. DISTRICT COURT SDNY
2011 AUG 10 P 4: 20
RECEIVED

3.      Defendant markets Vita Coco Products as "super-hydrating," "nutrient-packed," "mega-electrolyte," "life-enhancing," and healthy "super-water" that should be regularly consumed to help maintain optimal hydration.

4.      Defendant further claims that Vita Coco Products have more than "15 times the electrolytes found in sports drinks" and that "Vita Coco is about hydration."

5.      Defendant's representations are simply false.  Vita Coco Products are no more hydrating than a standard sports drink.

6.      Indeed, Vita Coco Products do not even live up to the nutritional claims on their own packaging.  According to a recent independent study, at least some Vita Coco Products have significantly less sodium, nearly 50% less, than advertised.  The same study discovered that Vita Coco Products similarly contained significantly less magnesium than advertised by Defendant.

7.      According to information provided by one Confidential Witness, Defendant knew or should have known of this discrepancy for years.  This witness was specifically told that the packaging used and preservatives in Vita Coco Products degrade the nutritional contents, including levels of sodium and magnesium, from the stated levels on product labels.

8.      As a direct result of Defendant's unlawful and deceptive sales practices, Vita Coco Products have become the best-selling brand of coconut water in the United States and one of the fastest growing beverage brands in the country.

9.      Plaintiff, on behalf of herself and all others similarly-situated, seeks monetary damages fully compensating all individuals and entities who purchased Vita Coco Products, punitive damages punishing Defendant for its past and continuing misconduct, injunctive relief barring Defendant from continuing to market and sell Vita Coco Products with false or

misleading nutritional labels and advertising, and such other relief as the Court deems necessary and appropriate.

## THE PARTIES

10.     Plaintiff Stacey B. Fishbein resides in Boynton Beach, Florida and is a citizen of the State of Florida.  Ms. Fishbein purchased Vita Coco Products and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

11.     Defendant All Market Inc. d/b/a Vita Coco is a Delaware Corporation, with its principal place of business located at 39 West 14th Street, New York, New York 10011.  In addition, All Market is authorized to do and, is in fact, doing business in the State of New York.

12.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## JURISDICTION AND VENUE

13.     This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").  Plaintiff is a citizen of the State of Florida, and Defendant is a citizen of the State of Delaware and is headquartered in the State of New York.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which the number of members of the proposed Class is not less than 100.

14.     In addition, this Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a).  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this matter is between citizens of different states.

15.     Venue is proper pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.  Further, Defendant resides in this judicial district for purposes of § 1391.  Also, Defendant has used the laws within, and has done substantial business in, this judicial district in that they have promoted, marketed, distributed, and sold Vita Coco Products in this judicial district.  Finally, there is personal jurisdiction over Defendant in this judicial district

## FACTUAL ALLEGATIONS

### The Coconut Water Market and the Rise in Popularity of Vita Coco Products

16.     Defendant manufactures, markets, and sells packaged coconut water as Vita Coco Products, and proclaims them to be the "all-natural, super-hydrating, fat-free, cholesterol-free, nutrient-packed, potassium-stacked, mega-electrolyte coconut super water!"

17.     Coconut water in general is the clear liquid inside of immature (green) coconuts. Coconut water is said to offer certain nutrients, including potassium, sodium, and magnesium.  It contains no cholesterol and almost no fat.  Natural sugars make it mildly sweet, although it usually has fewer calories than typical fruit juices.

18.     Michael Kirban ("Kirban") and Ira Liran ("Liran") saw natural benefits in coconut water and sought to capitalize on them by manufacturing, marketing, and selling a packaged version of coconut water.  Anne Field, *Coconut water sets off healthy-beverage wave; Barroom chat brings drink to U.S.*, CRAIN'S NEW YORK BUSINESS, Volume 27, Issue 22 (May 30, 2011) (Westlaw Citation 2011 WLNR 11050156).  Indeed, they decided they could position

coconut water as a new type of health drink; as Kirban has stated, "[w]e felt coconut water could be as big a market as orange juice in the United States." *Id.*

19.    In 2004, Kirban and Liran formed All Market Inc. to sell Vita Coco Products, Defendant's branded version of packaged coconut water.  Kirban became CEO of All Market, while Liran oversaw production development. *Id.*

20.    Advertising Vita Coco Products' "natural benefits" and aspiring to corner the market on coconut water, Kirban and Liran solicited and secured investors, who contributed millions of dollars to All Market. *Id.*

21.    Vita Coco Products became an overnight marketing success and "America's latest health craze." Vita Coco Products now include several flavors of coconut water.

22.    Today, Defendant has about 60% of the market and is projected to earn $100 million in sales in 2011. *Id.*; Paul Ziobro, *Coconut Water Brand Vita Coco Sees $100 Million In Sales This Year* (May 18, 2011).

23.    As Defendant states on its website: "Vita Coco has not only carved a new market in the non-carbonated beverage business and redefined the alternative sports beverage category, it has also become one of the fastest growing lifestyle beverages in North America."

### Defendant's Financial Growth Hinged on Misstating the Health Benefits and Nutritional Contents of Vita Coco Products

24.    Defendant's unparalleled marketing success hinged on advertising Vita Coco Products as "super-hydrating" beverages.  Defendant's website advertises Vita Coco Products as offering superior hydration.  The website states:

> Sure, **Vita Coco has more than 15 times the electrolytes found in sports drinks** and is as natural as natural gets (some say it's just like sticking a straw in a coconut). **Vita Coco is about hydration**, and hydration is important no matter what you do.  It's okay if you're not a marathon runner, a football player, or a Tour de France winner. Life is hectic enough, and you should be hydrated

while you live it. Go ahead, get hydrated and remember that life is
a sport. Hydrate with the beauty of one ingredient.

25.     Throughout their website, whatever the flavor, Defendant encourages their

customers to consume Vita Coco Products for natural hydration; Defendant urges consumers to

"Drink up!".

26.     By using such false and misleading terms as "super-hydrating," "mega-

electrolyte," and telling consumers that Vita Coco Products are the superior drink for hydration,

Defendant is actively and unlawfully misleading and misrepresenting the true hydrating benefits

associated with Vita Coco Products to consumers.

27.     According to an independent study (the "Consumer Lab Study") that compared

coconut water to both plain water and a rehydration drink (which contains about four times more

sodium but far less potassium than coconut water), all three provided adequate rehydration.

*Product Review: Coconut Waters Review – Tests of O.N.E., Vita Coco, and Zico,*

CONSUMERLAB.COM (Aug. 2, 2011), hereinafter *Coconut Waters Review*, attached as Exhibit A.

28.     Few studies have looked directly at coconut water and exercise. In one,

researchers had subjects run for 90 minutes in hot temperatures and then tested the effects of

plain water, a sports drink, coconut water or a sodium-enriched coconut water in the two hours

after exercise. While all remained "somewhat dehydrated," the sports drink worked as well as the

sodium-enriched coconut water. Anahad O'Connor, Really? The Claim: For Better Hydration,

Drink Coconut Water, New York Times (August 8, 2011).

29.     While pure coconut water contains many electrolytes—like sodium, *the critical

nutrient lost during sweating*—many commercial varieties, including Vita Coco Products, have

less sodium than is found in juice straight from a coconut or in traditional sports drinks. An 8.5

ounce serving of Vita Coco 100% Pure Coconut Water, for example, contains 30 milligrams of

sodium and 15 grams of carbohydrates. An eight-ounce serving of Gatorade Pro 02 Perform is equal in carbohydrates (14 grams) but has more sodium (200 milligrams). *Id.*

30.    The Consumer Lab Study emphasized the importance of sodium hydration. "Rehydration drinks like Gatorade typically contain 110 mg of sodium per an 8 oz cup (240 ml) serving," but "coconut waters made from pure coconut water . . . contain about 40 mg to 60 mg of sodium in a slightly larger serving (330 ml)." *Id.*

31.    Thus, while Defendant represents to consumers that Vita Coco Products provide more electrolytes than sports drinks, they actually offer far less (even if they did in fact include the levels of sodium stated on their nutrition labels).

32.    Nutrition experts have similarly refuted claims that Vita Coco Products have superior electrolyte properties as compared to traditional sports drinks. Thus, nutritionists caution that customers should think twice before consuming coconut water, "especially after heavy-duty exercise." According to Liz Applegate, director of sports nutrition at the University of California, Davis, coconut water's high potassium and low sodium combination is not ideal after strenuous exercise. "Even though the belief is that when you exercise you need a lot of potassium, sodium is more important," she said. "When you sweat, you lose a lot more sodium than potassium."

33.    Another nutritionist, Tania Ferraretto, has stated that, "[w]hile it's a marketing advantage to say [Vita Coco Products are] natural, in the real world your body doesn't distinguish between the electrolytes coming from coconut water or from a sports drink." And "[a]lthough it does provide electrolytes and a little bit of carbohydrate, a sports drink is specifically formulated for athletes and the electrolytes and carbohydrates are at the right level."

34.    In advertising Vita Coco Products, Defendant also fails to disclose that, because coconut water is very low in protein or branched chain amino acids, Vita Coco Products may not be considered a sports "recovery" drink to rebuild muscle protein.

35.    Nor does Defendant disclose that, consumed in large amounts, coconut water may have a mild laxative effect, which would obviously make it less effective at replenishing fluids in the long run.

36.    Defendant's misrepresentations are compounded by the information included on the nutrition information labels for Vita Coco Products, which state as follows:

| Nutrition Facts | |
| --- | --- |
| Serving Size 11.1 FL OZ (330ml) | |
| Servings Per Container: 1 | |
| Amount per serving | |
| **Calories** 60 | Calories from Fat 0 |
| | **% Daily Value*** |
| **Total Fat** 0g | **0%** |
| Saturated fat 0g | **0%** |
| Trans fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 40mg | **2%** |
| **Potassium** 680mg | **19%** |
| **Total Carb** 15g | **5%** |
| Dietary fiber 0g | **0%** |
| Sugars 15g | |
| **Protein** 0g | |
| Vitamin A 0% | Vitamin C 230% |
| Calcium 5% | Iron 0% |
| Phosphorous 5% | Magnesium 10% |
| (*) Percent Daily Values are based on a 2,000 calorie diet. | |

Ingredients: Coconut Water, (Vitamin C)

See Exhibit B, Vita Coco 100% Pure Coconut Water Nutrition Label.

37.     According to the Consumer Lab Study, a sample Vita Coco Product fell woefully

short of the electrolyte levels stated on its nutrition label.   To assess the accuracy of the

nutritional labeling of coconut waters,  ConsumerLab.com purchased three popular coconut

water products, including a Vita Coco Product, and tested levels of sugars, potassium, sodium, and magnesium. The study found that the Vita Coco Product fell "short on sodium (only 24 mg of its listed 40 mg) and magnesium (only 26 mg of its listed 40 mg). It also contained 16% less potassium than claimed[,] 571 mg instead of the listed 680 mg . . . ." These shortcomings were confirmed by two independent laboratories. *Coconut Waters Review*, supra.

38.     Defendant has misrepresented and failed to disclose the true amounts of electrolytes contained in its Vita Coco Products.

39.     According to founder and CEO Kirban, Defendant "tests multiple batches of the product every month and has never encountered variance greater than 15 percent." However, according to a Confidential Witness, the company only tested the product once during the 18 months she was with the company.

40.     Kirban has noted that the Consumer Lab Study raised a "big red flag internally" and that the company is considering adding a disclaimer to its packaging that amounts of nutrients may differ slightly from the label.

41.     According to another Confidential Witness, however, this flag was already raised and known to Defendant's employees. Defendants knew and were aware years ago that tetra pak packaging and one of the ingredients in their coconut water could degrade the nutritional value represented in the labeling. They specifically knew and were aware that the sodium and magnesium levels in particular could be lower.

42.     Notwithstanding its recent backtracking, Defendant has capitalized on its misrepresentations and omissions by charging premium prices for Vita Coco Products. As the Consumer Lab Study noted, "Coconut waters are not cheap." *Coconut Waters Review,* supra (also stating they are more expensive than soda or fruit juices).

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(2) and (b)(3) on behalf of the following classes:

> All persons or entities who purchased Vita Coco Products in the
> United States during the period between August 10, 2007 and the
> date of the final disposition of this action.

44.     The Class excludes Defendant and any entity in which Defendant has a

controlling interest, and its officers, directors, legal representatives, successors, and assigns.

45.     Plaintiff reserves the right to amend the Class definition if discovery and further

investigation reveals that the Class should be expanded or otherwise modified.

46.     Plaintiff reserves the right to establish sub-classes as appropriate.

47.     This action is brought and properly may be maintained as a class action under the

provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2) and (b)(3), and satisfies

the requirements thereof.

48.     There is a well-defined community of interest among members of the Class, and

the disposition of the claims of these members of the Class in a single action will provide

substantial benefits to all parties and to the Court.

49.     Notice can be provided to the members of the Class through publication, or

otherwise using techniques and a form of notice similar to those customarily used in consumer

class actions arising under Florida state law and federal law.

50.     The Class members are so numerous that joinder of all Class members is

impracticable.  At this time, Plaintiff is informed and believes that the Class includes thousands

of members.  Therefore, the Class is sufficiently numerous that joinder of all members of the

Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and

the resolution of their claims through the procedure of a class action will be of benefit to the

parties and the Court.

51.    Plaintiff's claims are typical of the claims of the Class members whom she seeks

to represent because Plaintiff and each member of the Class has been subjected to the same

deceptive and improper practices by Defendant and have been damaged in the same manner.

52.    Plaintiff will fairly and adequately represent and protect the interests of the Class

members as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiff has no interests

which are adverse to those of the members of the Class that she seeks to represent.  Plaintiff is

committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained

counsel who are competent and experienced in handling complex class action litigation on behalf

of consumers.

53.    A class action is superior to all other available methods of the fair and efficient

adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure

23(b)(3) because:

(a)    The expense and burden of individual litigation would not be

economically feasible for members of the Class to seek to redress their "negative value" claims

other than through the procedure of a class action.

(b)    If separate actions were brought by individual members of the Class, the

resulting multiplicity of lawsuits would cause members to seek to redress their "negative value"

claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely would retain the benefits of its

wrongdoing, and there would be a failure of justice.

54.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

55.     The common questions of fact include, but are not limited to, the following:

(a)     Whether Defendant's practice of misleading consumers who purchase Vita Coco Products violates one or more provisions of the Florida Deceptive and Unfair Trade Practices Act;

(b)     Whether Defendant's practice of misleading consumers who purchase Vita Coco Products violates one or more provisions of the New York Deceptive Trade Practices Laws;

(c)     Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

(d)     Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(e)     Whether Defendant breached the express warranties it made to Plaintiff and each member of the Class;

(f)     Whether Defendant made any negligent misrepresentations;

(g)     Whether Defendant was unjustly enriched;

(h)     Whether Defendant's conduct was willful or reckless; and

(i)     Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

56.     In the alternative, this action is certifiable under the provisions of Federal Rule of

Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the Class as a whole and necessitating that any such relief be

extended to members of the Class on a mandatory, class-wide basis.

57.     Plaintiff is not aware of any difficulty which will be encountered in the

management of this litigation which should preclude its maintenance as a class action.

### FIRST CLAIM
### Violation of the Florida  Deceptive and Unfair Trade Practices Act
### (Florida Statutes §501.201, *et seq.*)

58.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

59.     This claim is brought pursuant to the Florida Deceptive and Unfair Trade

Practices Act, Fla. Stat. §501.201 *et seq.* (the "Act").  The stated purpose of the Act is to "protect

the consuming public . . . from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

FLA. STAT. §501.202(2).

60.     Plaintiff is a consumer as defined by Fla. Stat. §501.203(7).  Vita Coco Products

are goods within the meaning of the Act.  Defendant is engaged in trade or commerce within the

meaning of the Act.

61.     Fla. Stat. §501.204(1) declares as unlawful "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce."

62.     Defendant violated and continues to violate the Act by engaging in the following

proscribed practices in transactions with Plaintiff and members of the Class, which were

intended to result in, and did result in, the sale of Vita Coco Products:

- 14 -

(a)     Defendant violated the Act by representing and advertising that Vita Coco Products, as discussed above, are "super-hydrating" and a "mega-electrolyte" and had "15 times the electrolytes found in sports drinks." Defendant knew, however, that this was not the case.

(b)     Defendant further violated the Act by misleading customers into believing that they could obtain superior rehydrating benefits from Vita Coco Products, knowing that Vita Coco Products are no better than an average sports drink in rehydrating consumers.

(c)     Defendant also affirmatively misrepresented the electrolyte content in Vita Coco Products, and inflated the sodium and magnesium levels in Vita Coco Products in its nutrition information labels.

(d)     Defendant's unfair and deceptive practices as described herein offend public policies and are immoral, unethical, unscrupulous and substantially injurious to Plaintiff and the Class.

63.     Defendant's unfair and deceptive practices are likely to mislead and have misled Plaintiff and the Class members acting reasonably in the circumstances.

64.     Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid premium prices for Vita Coco Products.

65.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant. The amount of such damages is presently unknown and will be proved at trial.

66.     Pursuant to Fla. Stat. §501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

67.     Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the

Class make claims for damages, punitive damages, attorneys' fees, and costs.

**SECOND CLAIM**
**Violation of the New York Deceptive Trade Practices Laws**
**(N.Y. Gen. Bus. Law § 349 *et seq.*)**

68.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

69.     Defendant's misrepresentations and omissions regarding the hydrating properties

and the electrolyte content in its Vita Coco Products constitute deceptive acts and practices and

violate the New York Deceptive Trade Practices Laws (N.Y. Gen. Bus. Law § 349, *et seq.*).

70.     Defendant materially misled Plaintiff and Class members by:

(a)     representing and advertising that Vita Coco Products, as discussed above,

are "super-hydrating" and a "mega-electrolyte" and had "15 times the electrolytes found in

sports drinks." Defendant knew, however, that this was not the case.

(b)     misleading customers into believing that they could obtain superior

rehydrating benefits from Vita Coco Products, knowing that Vita Coco Products are no better

than an average sports drink in rehydrating consumers.

(c)     affirmatively misrepresenting the electrolyte content in Vita Coco

Products, and inflated the sodium and magnesium levels in Vita Coco Products in its nutrition

information labels.

71.     Defendant's misrepresentations and omissions occurred within the State of New

York.

72.     As a result of Defendant's deceptive acts and practices, Plaintiff and Class

members have been injured.

73.     Such violations entitle Plaintiff and members of the Class to damages and

injunctive relief.

### THIRD CLAIM
### Violation of False, Misleading, and Deceptive Advertising Law
### (Florida Statutes §817.40, *et seq.*)

74.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

75.    Florida Statutes § 817.41(1) provides that "It shall be unlawful for any person to make or disseminate . . . before the general public . . . any misleading advertisement." Section 817.41 further provides that the making or dissemination of misleading advertising "shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

76.    Section 817.40 of the Florida Statutes defines the phrase "misleading advertising" to include "any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, . . . which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property . . . ."

77.    Defendant violated Florida Statutes § 817.41(1) by, *inter alia*, (a) misleadingly advertising the hydrating nature of Vita Coco Products, as described more fully herein; and (b) misleadingly advertising the electrolyte content of Vita Coco Products on their nutrition information labels.

78.    Defendant's knew, or through the exercise of reasonable care or investigation could have ascertained, that Vita Coco Products do not have the hydrating and electrolyte properties it advertised and that the electrolyte content on Vita Coco Products nutrition labels were not true.

79.    Defendant's misleading advertising was done with the specific intent and purpose to induce Plaintiff and members of the Class to purchase the Vita Coco Products at premium

prices. Defendant's deceptive practices were carried out in print, on-line, on Defendant's website, and other broad-based media, in order to induce Plaintiff and members of the Class to purchase Vita Coco Products.

80.    Plaintiff and members of the Class would not have purchased and consumed Vita Coco Products had it not been for Defendant's misleading advertising.

81.    The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

82.    Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions may therefore be presumed as a matter of law. The materiality of such representations and omissions also establishes causation between Defendant's conduct and Plaintiff's and the members of the Class' injuries.

83.    Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of Florida Statutes § 817.40, *et seq*.

84.    As a result of the foregoing, Plaintiff and members of the Class have been injured in fact and lost money or property, and they are entitled to actual damages, punitive damages, attorney's fees, and costs.

### FOURTH CLAIM
### Breach of Express Warranty

85.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

86.    Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased Vita Coco Products. The terms of that contract include the promises and affirmations of fact made by Defendant on Vita Coco Products' nutritional labels and through its marketing campaign, as described above. This

product labeling and advertising constitutes express warranties and became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other hand.

87.     All conditions precedent to Defendant's liability under this contract, including notice, have been performed by Plaintiff and the Class.

88.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the product with the advertised benefits described above.

89.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of Vita Coco Products.

**FIFTH CLAIM**
**Fraud**

90.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

91.     Defendant has made material misrepresentations and omissions about Vita Coco Products, as discussed above, including advertising to consumers that Vita Coco Products are "super-hydrating," a "mega-electrolyte," and have "15 times the electrolytes found in sports drinks."

92.     Defendant also misled customers into believing that they could obtain superior rehydrating benefits from Vita Coco Products, knowing that Vita Coco Products are no better than an average sports drink in rehydrating consumers.

93.     Defendant also affirmatively misrepresented the electrolyte content in Vita Coco Products in its nutrition information label, inflating the content of sodium and magnesium contained in Vita Coco Products.

94.     Defendant knew these statements were false and misleading.

95.     The hydrating nature and electrolyte content of Vita Coco Products is a material feature.  Plaintiff and other members of the Class would not have purchased Vita Coco Products but for Defendant's false and misleading representations and concealment of material facts.

96.     Defendant made the misrepresentations and omissions stated above with knowledge of the effect of concealing these material facts.  Defendant knew that by misleading consumers, it would sell more units of Vita Coco Products, which would result in higher profits.

97.     By misrepresenting and concealing material information about the Vita Coco Products, Defendant intended to induce Plaintiff and members of the Class into purchasing Vita Coco Products.

98.     Plaintiff and members of the Class justifiably relied on the representations made about Vita Coco Products.

99.     Defendant's representations and omissions regarding Vita Coco Products were made with knowledge or with reckless disregard of the laws of Florida prohibiting false and misleading statements.

100.    Defendant:

(a)     made representations, as facts, which were not true and which Defendant did not believe to be true at the time they were made;

(b)     made assertions, as facts, which were not true and which Defendant had no reasonable grounds for believing to be true at the times they were made; and/or

(c)     suppressed facts, which Defendant was bound to disclose, or gave information of other facts which were likely to mislead for want of communications of the suppressed facts.

101.    The wrongful acts committed by Defendant were done maliciously, oppressively and with the intent to defraud, and Plaintiffs and members of the Class are entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish and deter Defendant.

102.    As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the monies paid for Vita Coco Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**SIXTH CLAIM**
**Negligent Misrepresentation**

103.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

104.    Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

105.    In making the representations of fact to Plaintiff and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

106.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

107.    Plaintiff and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing Vita Coco Products, which reliance was justified.

108.    As a result of Defendant's wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Vita Coco Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

### SEVENTH CLAIM
### Unjust Enrichment

109.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

110.    By its wrongful acts and omissions, Defendant has been unjustly enriched at the expense of Plaintiff and members of the Class, who did not receive the goods to which they were entitled for the payments made to Defendant, and thus Plaintiff and members of the Class were unjustly deprived of money paid to Defendant.

111.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from its deceptive, misleading, and unlawful conduct alleged herein.

112.    Plaintiff and members of the Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

### RELIEF REQUESTED

Accordingly, Plaintiff, on behalf of herself and the Class members, seeks judgment as follows:

1.    Certifying the Class as requested herein, certifying Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

2.      Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions discussed herein;

3.      Awarding Plaintiff and the members of the Class compensatory damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and members of the Class;

5.      Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

6.      Awarding to Plaintiff and the Class punitive damages;

7.      Ordering Defendant to engage in corrective advertising;

8.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class

demand a trial by jury as to all matters so triable.

Respectfully submitted,

Bernard Persky (BP-1072)
Hollis L. Salzman
Kellie Lerner
LABATON SUCHAROW LLP
140 Broadway, 34th Floor
New York, NY 10005
Telephone:  (212) 907-0700
bpersky@labaton.com
hsalzman@labaton.com
klerner@labaton.com

# EXHIBIT A



**ConsumerLab.com®**
Celebrating 12 Years of Reporting 1999 - 2011

Our Mission: To identify the best quality health and nutritional products through independent testing.

Home   Product Tests   – Select a Review –      Warnings   Encyclopedia   Newsroom   Where to Buy   Type Search Term Here   **SEARCH**

### Product Review: *Coconut Waters Review -- Tests of O.N.E., Vita Coco, and Zico*

Initial Posting: 8/2/11

**Sections:** Jump to a section by clicking on its name.

* What It Is
* How It's Used
* Quality Concerns and What CL Tested
* What CL Found
* *Test Results by Product*
* Concerns and Cautions
* Full list of Ingredients by Product
* How Products Were Evaluated



**What It Is:**
Coconut water – an increasingly popular beverage option for athletes and natural food lovers – is the clear liquid that sloshes around the inside of immature (green) coconuts. On the beaches of Rio and other tropical locales, you can drink it straight from the coconut. Many grocery and health food stores sell it in cans, bottles, or other modern packaging.

Coconut water offers an unusual blend of nutrients. It's especially rich in potassium. One cup provides about 500 mg, roughly what you'd get from a banana or a cup of orange juice. It also contains sodium and magnesium and small amounts of phosphorus and vitamin C. It contains no cholesterol and almost no fat, but it does provide a little protein. Natural sugars make it mildly sweet, although it is relatively low in calories compared to typical fruit juices. Coconut water is very different from coconut *milk*, which is made from the pressed meat of mature coconuts and contains significant amounts of fat from coconut oils.

**How It's Used:**
Coconut water is a refreshing drink. Because it contains sugar as well as potassium and other electrolytes, it is sometimes marketed as a sports drink for rehydration during and after exercise. It may also be sought out by people who want more potassium in their diets. (See ConsumerLab.com Product Review of Potassium Supplements for more information about potassium.)

Rehydration -- How Good is Coconut Water?
When you sweat, you lose minerals as well as water. It only makes sense that a combination of water and minerals is the best way to replenish your supplies. The main mineral in sweat is sodium. In fact, there is about ten times as much sodium in sweat as potassium. So is potassium-rich coconut water really a good way to rehydrate?

A study that compared coconut water to both plain water and a rehydration drink containing about four times more sodium but far less potassium than coconut water found that all three provided adequate rehydration (Saat, J Physio Anthro 2002). However, blood sugar levels were restored faster with coconut water and the rehydration drink than with water. An advantage of the coconut water was its palatability. Subjects found it to be sweeter than the sports drink, and it was less likely to upset their stomachs.

The generally small amount of sodium in most coconut water products should still be a concern for anyone trying to rehydrate after strenuous exercise. Rehydration drinks like Gatorade typically contain 110 mg of sodium per an 8 oz cup (240 mL) serving, and even greater amounts may be useful. Commercial coconut waters made from pure coconut water (not concentrate) claim to contain about 40 mg to 60 mg of sodium in a slightly larger serving (330 mL). And because coconut water is very low in protein or branched chain amino acids, it should also not be considered a sports "recovery" drink to rebuild muscle protein. In large amounts, coconut water may have a mild laxative effect. Obviously, this would make it less effective at replenishing fluids in the long run.

**Quality Concerns and What CL Tested:**
Because coconut water is a natural food product, many different factors can affect the nutritional content. To assess the accuracy of the nutritional labeling of coconut waters, ConsumerLab.com purchased three popular coconut water products. We tested levels of sugars, potassium, sodium, and magnesium. Products were also checked for potential contamination with lead. ConsumerLab.com tests all botanical products for this heavy metal, a common contaminant in such products.

**What CL Found:**
Among the three products tested, only *Zico Natural Pure Premium Coconut Water* (414 mL bottle) passed all of our tests. Two others failed to provide their claimed amounts of minerals. No detectable amounts of lead were found in any of the products. Shortcomings of the products were confirmed in two independent laboratories:

* *O.N.E. Coconut Water* (330 mL tetra pak) provided only 11 mg of sodium – far less than the 60 mg it promised. It also came up short on magnesium, providing 19 mg instead of the listed 25 mg.
* *VitaCoco 100% Pure Coconut Water* (330 mL tetra pak) was also short on sodium (only 24 mg of its listed 40 mg) and magnesium (only 26 mg of its listed 40 mg). It also contained 16% less potassium than claimed 571 mg instead of the listed 680 mg -- although this amount of variation (+/- 20%) is permitted by the FDA for naturally occurring ingredients in food products.

"A Good Source of Electrolytes"?
The front of the package of *O.N.E. Coconut Water* claims the product is a "Good Source of Electrolytes." The FDA allows products that provide 10% to 19% of the Daily Value (DV) of a nutrient to claim to be a "good source" of that nutrient. *O.N.E* is a good source of only one electrolyte potassium, of which it provides

19% of the 3,400 mg adult DV for potassium. To be a good source of sodium, *O.N.E.* would need to provide at least 240 mg per daily serving; we found it to have only 11 mg. Likewise, *O.N.E.* was found to have 5% (19 mg) of the daily value of magnesium.

*VitaCoco 100% Pure Coconut Water* claims to provide more electrolytes than sports drinks. But it, too, had little sodium. While its label claims 10% of the DV for magnesium, which would be 40 mg, CL found it to only have 26 mg disqualifying it as a good source of the mineral. It is true that, like all coconut waters, this product has a lot more potassium than a sports drink; however, it has much less sodium. An equal amount (330 mL) of *Original Gatorade*, for example, would provide about 150 mg of sodium, compared to *Vita Coco's* 24 mg.

A bottle of *Zico Natural* provided a more even balance of electrolytes. The 414 mL bottle contained 180 mg of sodium, several times more than we found in *O.N.E.* and *Vita Coco* products and close to the amount you would get from an equal amount of *Gatorade*. It also had slightly more magnesium (35 mg) than the two other products.

Be aware that *Zico* sells two different *Natural* products. We tested the one that comes in a 414 mL bottle and is made from coconut water concentrate. The other is a 330 mL tetra pak containing pure coconut water, similar to the other two other products we tested. The *Zico Natural* tetra pak lists a much lower amount of sodium (60 mg) than the bottled *Zico Natural* (160 mg).

**Cost**
Coconut waters are not cheap. The most expensive product that we tested was the 414 mL bottle of *Zico Natural* at $2.50. The 330 mL tetra pak of *O.N.E.* was the least expensive at $1.73. A 330 mL tetra pak of *Vita Coco* cost $1.90.

**Taste**
Coconut water is typically consumed cold, but CL staff drank the products at room temperature to get a better sense of their inherent tastes. The first thing we noticed was a slight variation in the colors of the waters: *O.N.E.* had a slight pink hue; *Vita Coco* had a very faint yellow hue, and *Zico Natural* had no color but was slightly cloudy. All were mildly sweet. *O.N.E.* had a slightly sour taste, and *Vita Coco* had a similar but less pronounced tartness. *Zico Natural* had a milder, less sour but slightly more salty taste, with a bit of a nutty flavor. Its taste is likely the result of "natural flavors" listed as an ingredient as well as its higher sodium content.



O.N.E., Zico, and Vita Coco

**Overall Findings**
All of the tested products were pleasant tasting. They are certainly a healthier choice than a can of soda or a fruit drink, which contain twice the amount of sugar (a 12 oz, or 355 mL, can of Coke has 39 grams of sugar!). However, they are also somewhat more expensive. Coconut waters are a good source of potassium. If you are using coconut water to help rehydrate, the bottled *Zico Natural* in a bottle is your best bet due to its more substantial sodium content; our tests found that it contains 15 times as much sodium as *O.N.E.*, for example. Despite a somewhat larger serving size, *Zico Natural* was in the same low-calorie range (60) as the other two products. *Zico* was also the only product to live up to the listed amounts of the nutrients we tested. The only drawback is that it's a little more expensive than the other two.

**Test Results by Product:**
Listed below are the test results of the three coconut waters selected for review by ConsumerLab.com, listed alphabetically. Also shown are the labeled serving sizes and claimed amounts of the key nutrients. If a product is listed as Approved, it was found to contain the labeled amounts of tested nutrients (sugar, potassium, sodium, and magnesium) and did not exceed CL's stringent criteria for lead contamination. The full list of ingredients and nutrients is available for each product by clicking on the word Ingredients in the first column. For more information about testing go to How Products Were Evaluated.

| CONSUMERLAB.COM RESULTS FOR COCONUT WATER PRODUCTS | | | | |
|---|---|---|---|---|
| Click on $ Price Check beneath a product name to find a vendor that sells it. | | | | |
| Product Name and Serving Size on Label<br><br>Distributor<br><br>Click on "Ingredients" for Full List | Claimed Amount of Key Nutrients per Suggested Serving on Label | OVERALL RESULTS: APPROVED (Passed) or NOT APPROVED (Failed) | – TEST RESULTS –<br>(See How Products Were Evaluated)<br><br>Met Claim For Electrolytes and Sugars<br>✓ = Met Claim<br><br>If Did Not Meet Claim, Amount Found and Percent of Claim | Did Not Exceed Contamination Limits for Lead | Cost per Serving<br><br>(Additional Ingredient Information on Label) |
| O.N.E. Coconut Water<br>(330 mL tetra pak carton)<br><br>Dist. by One World Enterprises, LLC<br>Ingredients | Potassium: 670 mg<br>Sodium: 60 mg<br>Magnesium: 25 mg<br><br>Sugars: 14 g | NOT APPROVED | Potassium: ✓<br><br>Sodium: 11 mg (18.3%)<br><br>Magnesium: 19 mg (76.6%)<br><br>Sugars: ✓ | ✓ | $1.73<br><br>Natural coconut water |
| VitaCoco, 100% Pure Coconut Water<br>(330 mL tetra pak carton)<br><br>Dist. by All Market Inc.<br>Ingredients | Potassium: 680 mg<br>Sodium: 40 mg<br>Magnesium: 40 mg<br><br>Sugars: 15 g | NOT APPROVED | Potassium: ✓<br><br>Sodium: 24 mg (59%)<br><br>Magnesium: 26 mg (64.4%)<br><br>Sugars: ✓ | ✓ | $1.90<br><br>Natural coconut water with added vitamin C (230% of Daily Value of vitamin C[2]) |

| | | | | | | |
|---|---|---|---|---|---|---|
| Zico Natural (Bottle), Pure Premium Coconut Water (414 mL bottle)<br><br>Dist. by ZICO Beverages, LLC<br>Ingredients<br>$ Price Check | Potassium:  569 mg<br>Sodium:    160 mg<br>Magnesium:  35 mg<br><br>Sugars:    12 g<br><br>Per 330 mL*<br>Potassium:  454 mg<br>Sodium:    128 mg<br>Magnesium:  28 mg<br><br>Sugars:    9.6 g | APPROVED | Potassium: ✓<br>Sodium:   ✓<br>Magnesium: ✓<br><br>Sugars:   ✓ | ✓ | | $2.50<br>($1.99 based on 330 mL serving*)<br><br>Coconut water concentrate with natural flavors |

* Calculated for comparison to O.N.E. and VitaCoco products which are smaller sizes (330 mL) than Zico (414 mL bottle).

[1] Potassium amount found was lower than listed but within the naturally occurring levels allowed by Food and Drug Administration (FDA) (+/- 20% of labeled amount). Amount found was 571 mg, which is 84% of the listed amount (680 mg).

[2] Not tested, but claimed on label. Daily Value of Vitamin C is 60 mg. (230% of DV = 138 mg of vitamin C.)

Unless otherwise noted, information about the products listed above is based on the samples purchased by ConsumerLab.com (CL) for this Product Review. Manufacturers may change ingredients and label information at any time, so be sure to check labels carefully when evaluating the products you use or buy. If a product's ingredients differ from what is listed above, it may not necessarily be of the same quality as what was tested.

The information contained in this report is based on the compilation and review of information from product labeling and analytical testing. CL applies what it believes to be the most appropriate testing methods and standards. The information in this report does not reflect the opinion or recommendation of CL, its officers or employees. CL cannot assure the accuracy of information provided to it by third parties. Liability to any person for any loss or damage caused by errors, omissions, or inaccuracies in this report is hereby disclaimed.

Copyright ConsumerLab.com, LLC, 2011. All rights reserved. Not to be reproduced, excerpted, or cited in any fashion without the express written permission of ConsumerLab.com LLC.

**Concerns and Cautions:**
As noted earlier, in large amounts, coconut water may have a mild laxative effect.

To further assist consumers, ConsumerLab.com licenses its flask-shaped CL Seal of Approved Quality (see The CL Seal) to manufacturers for use on labels of products that have passed its testing. ConsumerLab.com periodically re-evaluates these products to ensure their compliance with ConsumerLab.com's standards.

Information on this site is provided for informational purposes only. It is not an endorsement of any product nor it is it meant to substitute for the advice provided by physicians or other healthcare professionals. The information contained herein should not be used for diagnosing or treating a health problem or disease.

#128#

©2011 ConsumerLab.com, LLC. All rights reserved. A single copy of a report may be printed for personal use by the subscriber.
It is otherwise unlawful to print, download, store or distribute content from this site without permission.
ConsumerLab.com name and flask logo are both registered trademarks of ConsumerLab.com, LLC.

# EXHIBIT B





**Nutrition Facts**
Serving Size 11.1 fl oz (330ml)
Serving Per Container: 1

Amount per serving
Calories 60      Calories from Fat 0
                        % Daily Value*

| | |
|---|---|
| Total Fat 0g | 0% |
| Saturated fat 0g | 0% |
| Trans fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 40mg | 2% |
| Potassium 680mg | 19% |
| Total Carb 15g | 5% |
| Dietary fiber 0g | 0% |
| Sugars 15g | |
| Protein 0g | |

| | |
|---|---|
| Vitamin A 0% | Vitamin C 200% |
| Calcium 5% | Iron 0% |
| Phosphorous 5% | Magnesium 10% |

(*) Percent Daily Values are
based on a 2,000 calorie diet.

BORN IN BRAZIL

Produced for:
All Market Inc.
89 West 14th Street #404
New York, NY 10011
www.vitacoco.com

Does not contain gluten.
Contains only natural ingredients, taste may vary.
Produced in the Philippines.

