**COPY**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| STACEY B. FISHBEIN, KATRINA GARCIA, CATALINA SALDARRIAGA and RUSSELL MARCHEWKA, on Behalf of Themselves and All Others Similarly Situated, ) ) ) ) ) | Case No. 11-Civ-5580 |
| Plaintiffs, ) ) | **AMENDED CLASS ACTION COMPLAINT** |
| vs. ) ) | **JURY TRIAL DEMANDED** |
| ALL MARKET INC. d/b/a VITA COCO, ) ) | |
| Defendant. ) ) | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Stacey B. Fishbein,  Katrina Garcia, Catalina Saldarriaga, and Russell

Marchewka ("Plaintiffs"), by and through their undersigned counsel, upon personal knowledge

as to themselves and upon information and belief as to all other matters, allege as follows:

1.      Plaintiffs bring this action against defendant All Market Inc. d/b/a Vita Coco

("All Market" or "Defendant") on behalf of themselves and all other similarly situated

individuals and entities who purchased, for personal use, "Vita Coco Coconut Water" products

(collectively, "Vita Coco Products") during the period between August 10, 2007 and the date of

the final disposition of this action (as defined below, the "Classes").

## BACKGROUND

2.      Defendant manufactures, markets and sells Vita Coco Products throughout the

United States and North America.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY B. FISHBEIN, KATRINA GARCIA, CATALINA SALDARRIAGA and RUSSELL MARCHEWKA, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>ALL MARKET INC. d/b/a VITA COCO,<br><br>                    Defendant. | Case No. 11-Civ-5580<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Stacey B. Fishbein, Katrina Garcia, Catalina Saldarriaga, and Russell Marchewka ("Plaintiffs"), by and through their undersigned counsel, upon personal knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

1.      Plaintiffs bring this action against defendant All Market Inc. d/b/a Vita Coco ("All Market" or "Defendant") on behalf of themselves and all other similarly situated individuals and entities who purchased, for personal use, "Vita Coco Coconut Water" products (collectively, "Vita Coco Products") during the period between August 10, 2007 and the date of the final disposition of this action (as defined below, the "Classes").

## BACKGROUND

2.      Defendant manufactures, markets and sells Vita Coco Products throughout the United States and North America.

3.      Defendant markets nationwide Vita Coco Products as "super-hydrating," "nutrient-packed," "mega-electrolyte," "life-enhancing," and healthy "super-water" that should be regularly consumed to help maintain optimal hydration.

4.      Defendant further claims that Vita Coco Products have more than "15 times the electrolytes found in sports drinks" and that "Vita Coco is about hydration."

5.      Defendant's representations are simply false and materially misleading.  Vita Coco Products are no more hydrating than a standard, less expensive sports drink.

6.      Indeed, Vita Coco Products do not even live up to the nutritional claims on their own packaging.  According to a recent independent study, at least some Vita Coco Products have significantly less sodium, nearly 50% less, than advertised.  The same study discovered that Vita Coco Products similarly contained significantly less magnesium than advertised by Defendant.

7.      According to information provided by one Confidential Witness, Defendant knew or should have known of this discrepancy for years.  This witness was specifically told that the packaging used and preservatives in Vita Coco Products degrade the nutritional contents, including levels of sodium and magnesium, from the stated levels on Defendant's product labels.

8.      As a direct result of Defendant's unlawful and deceptive sales practices, Vita Coco Products have become the best-selling brand of coconut water in the United States and one of the fastest growing beverage brands in the country.

9.      Plaintiffs, on behalf of themselves and all others similarly-situated, seek monetary damages fully compensating all individuals and entities who purchased Vita Coco Products at retail, punitive damages punishing Defendant for its past and continuing misconduct, injunctive relief barring Defendant from continuing to market and sell Vita Coco Products with false or

misleading nutritional labels and advertising, and such other relief as the Court deems necessary and appropriate.

## THE PARTIES

10.     Plaintiff Stacey B. Fishbein resides in Boynton Beach, Florida and is a citizen of the State of Florida. Ms. Fishbein purchased Vita Coco Products in Florida and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

11.     Plaintiff Katrina Garcia resides in Miami-Dade County, Florida and is a citizen of the State of Florida. Ms. Garcia purchased Vita Coco Products in Florida and was financially injured as a result of Defendant's deceptive conduct alleged herein.

12.     Plaintiff Catalina Saldarriaga resides in Jackson Heights, New York and is a citizen of the State of New York. Ms. Saldarriaga purchased Vita Coco Products in New York and was financially injured as a result of Defendant's deceptive conduct alleged herein.

13.     Plaintiff Russell Marchewka resides in Santa Ana, California and is a citizen of the State of California. Mr. Marchewka purchased Vita Coco Products in California and was financially injured as a result of Defendant's deceptive conduct alleged herein.

14.     Defendant All Market Inc. d/b/a Vita Coco is a Delaware corporation, with its principal place of business located in New York, New York. In addition, All Market is authorized to do and, is in fact, doing business in the State of New York.

15.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## JURISDICTION AND VENUE

16.     This Court has original diversity jurisdiction over this action under the Class

Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiffs are citizens of the States of

Florida, New York and California and Defendant is a citizen of the State of Delaware and is

headquartered with its principal place of business in the State of New York. The matter in

controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a

class action in which the number of members of the proposed classes are not less than 100.

17.     In addition, this Court has diversity jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and members of the proposed classes are citizens of

States different from the State in which Defendant is a citizen.

18.     Venue is proper pursuant to 28 U.S.C. § 1391. A substantial part of the events or

omissions giving rise to Plaintiffs' claims occurred in this judicial district. Further, Defendant

resides in this judicial district for purposes of § 1391. Also, Defendant has used the laws within,

and has done substantial business in, this judicial district in that it has promoted, marketed,

distributed, and sold Vita Coco Products in this judicial district. The unlawful conduct

complained of herein arose in and emanated from business decisions made in this judicial

district. Finally, there is personal jurisdiction over Defendant in this judicial district

## FACTUAL ALLEGATIONS

### The Coconut Water Market and the Rise in Popularity of Vita Coco Products

19.     Defendant manufactures, markets, and sells packaged coconut water as Vita Coco

Products throughout the United States, and proclaims them to be the "all-natural, super-

hydrating, fat-free, cholesterol-free, nutrient-packed, potassium-stacked, mega-electrolyte

coconut super water!"

20.    Coconut water in general is the clear liquid inside of immature (green) coconuts. Coconut water is said to offer certain nutrients, including potassium, sodium, and magnesium. It contains no cholesterol and almost no fat. Natural sugars make it mildly sweet, although it usually has fewer calories than typical fruit juices.

21.    The founders of Defendant, Michael Kirban ("Kirban") and Ira Liran ("Liran"), saw natural benefits in coconut water and sought to capitalize on them by manufacturing, marketing, and selling a packaged version of coconut water. Anne Field, *Coconut water sets off healthy-beverage wave; Barroom chat brings drink to U.S.*, CRAIN'S NEW YORK BUSINESS, Volume 27, Issue 22 (May 30, 2011) (Westlaw Citation 2011 WLNR 11050156). Indeed, they decided they could position and market coconut water as a new type of health drink; as Kirban has stated, "[w]e felt coconut water could be as big a market as orange juice in the United States." *Id.*

22.    In 2004, Kirban and Liran formed All Market Inc. to sell Vita Coco Products, Defendant's branded version of packaged coconut water. Kirban became CEO of All Market, while Liran oversaw production development. *Id.*

23.    Advertising Vita Coco Products' "natural benefits" and seeking to corner the market on coconut water, Kirban and Liran solicited and secured investors, who contributed millions of dollars to All Market. *Id.*

24.    Vita Coco Products became an overnight marketing success and "America's latest health craze." Vita Coco Products now include several flavors of coconut water.

25.    Today, Defendant has about 60% of the market and is projected to earn $100 million in sales in 2011. *Id.*; Paul Ziobro, *Coconut Water Brand Vita Coco Sees $100 Million In Sales This Year* (May 18, 2011).

26.     As Defendant states on its website: "Vita Coco has not only carved a new market in the non-carbonated beverage business and redefined the alternative sports beverage category, it has also become one of the fastest growing lifestyle beverages in North America."

**Defendant's Financial Growth Hinged on Misstating and Misrepresenting the**
**Health Benefits and Nutritional Contents of Vita Coco Products**

27.     Defendant's unparalleled marketing success hinged on advertising and promoting Vita Coco Products as "super-hydrating" beverages.  Defendant's website advertises and unequivocally represents Vita Coco Products as offering superior hydration.  The website states:

> Sure, *Vita Coco has more than 15 times the electrolytes found in sports drinks* and is as natural as natural gets (some say it's just like sticking a straw in a coconut).  *Vita Coco is about hydration,* and hydration is important no matter what you do.  It's okay if you're not a marathon runner, a football player, or a Tour de France winner.  Life is hectic enough, and you should be hydrated while you live it.  Go ahead, get hydrated and remember that life is a sport.  Hydrate with the beauty of one ingredient.

28.     Throughout their website, whatever the flavor, Defendant encourages their customers to consume Vita Coco Products for natural hydration; Defendant urges consumers to "Drink up!".

29.     By using such false and misleading terms as "super-hydrating," "mega-electrolyte," and telling consumers that Vita Coco Products are the superior drink for hydration, Defendant is actively, specifically and unlawfully misleading and misrepresenting to consumers the true hydrating benefits associated with Vita Coco Products to consumers.

30.     According to an independent study (the "Consumer Lab Study") that compared coconut water to both plain water and a rehydration drink (which contains about four times more sodium but far less potassium than coconut water), all three provided adequate rehydration. *Product Review: Coconut Waters Review – Tests of O.N.E., Vita Coco, and Zico,* CONSUMERLAB.COM (Aug. 2, 2011), hereinafter *Coconut Waters Review,* attached as Exhibit A.

31.     Few studies have looked directly at coconut water and exercise.  In one, researchers had subjects run for 90 minutes in hot temperatures and then tested the effects of plain water, a sports drink, coconut water or a sodium-enriched coconut water in the two hours after exercise.  While all remained "somewhat dehydrated," the sports drink worked as well as the sodium-enriched coconut water.  Anahad O'Connor, Really?  The Claim: For Better Hydration, Drink Coconut Water, New York Times (August 8, 2011).

32.     While pure coconut water contains many electrolytes—like sodium, *the critical nutrient lost during sweating*—many commercial varieties, including Vita Coco Products, have less sodium than is found in juice straight from a coconut or in traditional sports drinks.  An 8.5-ounce serving of Vita Coco 100% Pure Coconut Water, for example, contains 30 milligrams of sodium and 15 grams of carbohydrates.  An eight-ounce serving of Gatorade Pro 02 Perform is equal in carbohydrates (14 grams) but has more sodium (200 milligrams).  *Id.*

33.     The Consumer Lab Study emphasized the critical importance of sodium for hydration.  "Rehydration drinks like Gatorade typically contain 110 mg of sodium per an 8 oz cup (240 ml) serving," but "coconut waters made from pure coconut water . . . contain about 40 mg to 60 mg of sodium in a slightly larger serving (330 ml)."  *Id.*

34.     Thus, while Defendant represents to consumers that Vita Coco Products provide more electrolytes than sports drinks, they actually offer far less sodium (even if they did in fact include the levels of sodium stated on their nutrition labels).

35.     Nutrition experts have similarly refuted claims that Vita Coco Products have superior electrolyte properties as compared to traditional sports drinks.  Thus, nutritionists caution that customers should think twice before consuming coconut water, "especially after heavy-duty exercise."  According to Liz Applegate, director of sports nutrition at the University

of California, Davis, coconut water's high potassium and low sodium combination is not ideal after strenuous exercise. "Even though the belief is that when you exercise you need a lot of potassium, sodium is more important," she said. "When you sweat, you lose a lot more sodium than potassium."

36.     Another nutritionist, Tania Ferraretto, has stated that, "[w]hile it's a marketing advantage to say [Vita Coco Products are] natural, in the real world your body doesn't distinguish between the electrolytes coming from coconut water or from a sports drink." And "[a]lthough it does provide electrolytes and a little bit of carbohydrate, a sports drink is specifically formulated for athletes and the electrolytes and carbohydrates are at the right level."

37.     In advertising Vita Coco Products, Defendant also fails to disclose that, because coconut water is very low in protein or branched chain amino acids, Vita Coco Products may not be considered a sports "recovery" drink to rebuild muscle protein.

38.     Nor does Defendant disclose that, consumed in large amounts, coconut water may have a mild laxative effect, which would obviously make it less effective at replenishing fluids in the long run.

39.     Defendant's misrepresentations are compounded by the information included on the nutrition information labels for Vita Coco Products, which state as follows:

| Nutrition Facts | |
|---|---|
| Serving Size 11.1 FL OZ (330ml) | |
| Servings Per Container: 1 | |
| **Amount per serving** | |
| **Calories 60** | Calories from Fat 0 |
| | **% Daily Value*** |
| **Total Fat** 0g | **0%** |
| Saturated fat 0g | **0%** |
| Trans fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 40mg | **2%** |
| **Potassium** 680mg | **19%** |
| **Total Carb** 15g | **5%** |
| Dietary fiber 0g | **0%** |
| Sugars 15g | |
| **Protein** 0g | |
| Vitamin A 0% | Vitamin C 230% |
| Calcium 5% | Iron 0% |
| Phosphorous 5% | Magnesium 10% |
| (*) Percent Daily Values are based on a 2,000 calorie diet. | |

Ingredients: Coconut Water, (Vitamin C)

See Exhibit B, Vita Coco 100% Pure Coconut Water Nutrition Label.

40.    According to the Consumer Lab Study, a sample Vita Coco Product fell woefully short of the electrolyte levels stated on its nutrition label.  To assess the accuracy of the nutritional labeling of coconut waters,  ConsumerLab.com purchased three popular coconut

water products, including a Vita Coco Product, and tested levels of sugars, potassium, sodium, and magnesium. The study found that the Vita Coco Product fell "short on sodium (only 24 mg of its listed 40 mg) and magnesium (only 26 mg of its listed 40 mg). It also contained 16% less potassium than claimed[,] 571 mg instead of the listed 680 mg . . . ." These shortcomings were confirmed by two independent laboratories. *Coconut Waters Review*, supra.

41.     Defendant has consistently misrepresented and failed to disclose the true amounts of electrolytes contained in its Vita Coco Products.

42.     According to founder and CEO Kirban, Defendant "tests multiple batches of the product every month and has never encountered variance greater than 15 percent." However, according to a Confidential Witness, the company only tested the product once during the 18 months she was with the company.

43.     Kirban has noted that the Consumer Lab Study raised a "big red flag internally" and that the company is considering adding a disclaimer to its packaging that amounts of nutrients may differ slightly from the label.

44.     According to another Confidential Witness, however, this flag had already been raised and was known to Defendant's employees. Defendant knew and was aware years ago that Defendant's tetra pak packaging and one of the ingredients in its coconut water could degrade the nutritional value represented in the labeling. It specifically knew and was aware that the sodium and magnesium levels in particular could be lower.

45.     Notwithstanding its recent backtracking, Defendant has continued to capitalize on its misrepresentations and omissions by charging premium prices for Vita Coco Products. As the Consumer Lab Study noted, "Coconut waters are not cheap." *Coconut Waters Review*, supra (also stating they are more expensive than soda or fruit juices).

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and

23(b)(2) and (b)(3) on behalf of the following classes:

### NATIONWIDE CLASS

> All persons or entities in the United States who made retail
> purchases of Vita Coco Products during the period between August
> 10, 2007 and the date of the final disposition of this action, and/or
> such subclasses as the Court may deem appropriate ("Nationwide
> Class").

### WARRANTY CLASS

47.    Plaintiffs Catalina Saldarriaga and Russell Marchewka ("Warranty Plaintiffs")

bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3) on

behalf of the following class:

> All persons or entities in the Non-Privity Breach of Express
> Warranty States[1]  who made retail purchases of Vita Coco
> Products  during the period between August 10, 2007 and the date
> of the final disposition of this action, and/or such sub-classes as the
> Court may deem appropriate ("Warranty Class").

48.    The Nationwide Class and Warranty Class (together, the Classes") exclude

Defendant and any entity in which Defendant has a controlling interest, and its officers,

directors, legal representatives, successors, and assigns.

49.    Plaintiffs reserve the right to amend the definitions of the Classes if discovery and

further investigation reveals that the Classes should be expanded or otherwise modified.

50.    Plaintiff reserves the right to establish sub-classes as appropriate.

---

[1] The Non-Privity Breach of Express Warranty States are defined hereinafter to include only the states of
Arkansas, Arizona, California, Colorado, Connecticut, District of Columbia, Hawaii, Indiana, Kansas, Louisiana,
Maine, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New
York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee,
Texas, Utah, Vermont, Washington, West Virginia, or Wyoming, which do not require privity.

51.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

52.     There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

53.     Notice can be provided to the members of the Classes through a variety of means, including publication, the cost of which is properly imposed upon the Defendant.

54.     The members of the Classes are so numerous that joinder of all members of the Classes is impracticable.  At this time, Plaintiffs are informed and believe that the Classes include thousands of members.  Therefore, the Classes are sufficiently numerous that joinder of all members of the Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

55.     Plaintiffs' claims are typical of the claims of the members of the Classes whom they seek to represent because Plaintiffs and each member of the Classes has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

56.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4).  Plaintiffs have no interests which are adverse to those of the members of the Classes that they seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end,

Plaintiffs have retained counsel who are competent and experienced in handling complex class action litigation on behalf of consumers.

57.     A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

(a)     The expense and burden of individual litigation would not be economically feasible for members of the Classes to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)     If separate actions were brought by individual members of the Classes, the resulting multiplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)     Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

58.     Common questions of law and fact exist as to the members of the Classes, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Classes within the meaning of Federal Rule of Civil Procedure 23(b)(3).

59.     The common questions of fact include, but are not limited to, the following:

(a)     Whether Defendant's nationwide practice of misleading consumers who purchase Vita Coco Products violates the applicable consumer protection statutes;

(b)     Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

- 13 -

(c)     Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

(d)     Whether Defendant violated express warrantees;

(e)     Whether Defendant made any negligent misrepresentations;

(f)     Whether Defendant was unjustly enriched;

(g)     Whether Defendant's conduct was willful or reckless; and

(h)     Whether Plaintiffs and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

60.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole and necessitating that any such relief be extended to members of the Classes on a mandatory, class-wide basis.

61.     Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## FIRSTCLAIM
## Violation of State Consumer Protection Laws

62.     Plaintiff incorporates by reference the allegations in the preceding paragraphs. Each of these Plaintiffs brings this claim on his/her own behalf under the law of the state in which he/she purchased Vita Coco Products produced by Defendant on behalf of:  (a) all other persons or entities who purchased Vita Coco products by Defendant in the same state as Plaintiffs purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

- 14 -

63.     Each Plaintiff and member of the Nationwide Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Vita Coco Products produced by Defendant.

64.     The consumer protection laws of the state in which each Plaintiff and member of the Nationwide Class purchased Vita Coco Products declares that unfair or deceptive acts or practices in the conduct or trade or commerce are unlawful.

65.     Each of the fifty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.  These statutes are:

(a)     Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.*;

(b)     Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

(c)     Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.*;

(d)     Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

(e)     California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

(f)     Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

(g)     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

(h)     Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

(i)     District of Columbia Consumer Protection Procedures Act, D.C. Code §

28 3901, *et seq.*;

(j)     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §

501.201, *et seq.*;

(k)     Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

(l)     Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-

1, *et seq.*;

(m)     Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

(n)     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

§ 505/1, *et seq.*;

(o)     Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-

0.1, *et seq.*;

(p)     Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.*;

(q)     Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.*;

(r)     Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et*

*seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;

(s)     Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev.

Stat. Ann. §§ 51:1401, *et seq.*;

(t)     Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and

Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*,

(u)     Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*

*seq.*;

(v)     Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

(w)     Michigan Consumer Protection Act, §§ 445.901, *et seq.*;

(x)     Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

(y)     Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

(z)     Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

(aa)    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

(bb)    Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

(cc)    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;

(dd)    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

(ee)    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.*;

(ff)    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.* ;

(gg)    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

(hh)    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

(ii)    North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.*;

(jj)   Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.*;

(kk)   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

(ll)   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

(mm)   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, *et seq.*;

(nn)   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

(oo)   South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

(pp)   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

(qq)   Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.*;

(rr)   Texas Stat. Ann. §§ 17.41, *et seq.*, Texas Deceptive Trade Practices Act;

(ss)   Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;

(tt)   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

(uu)   Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.*;

(vv)   Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

(ww)   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

(xx)   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§100.18, *et seq.*;

(yy)    Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et*

*seq.*

66.    The Vita Coco Products manufactured, marketed and sold by Defendant

constitutes products to which these consumer protection laws apply.

**SECONDCLAIM**
**Breach of Express Warranty**

67.    Warranty Plaintiffs  bring this claim on his/her own behalf under the law of the

state in which he/she purchased Vita Coco Products manufactured, marketed and sold by

Defendant and on behalf of: (a) all other persons who purchased Vita Coco Products produced

by Defendant in the same state; and (b) all other persons who purchased such products in states

having similar laws regarding express warranty.

68.    Warranty Plaintiffs, and each member of the Warranty Class, formed a contract

with Defendant at the time Warranty Plaintiffs and the other members of the Warranty Class

purchased Vita Coco Products.  The terms of that contract include the promises and affirmations

of fact made by Defendant on Vita Coco Products' nutritional labels and through its nationwide

marketing campaign, as described above.  This product labeling and advertising constitutes

express warranties and became part of the basis of the bargain, and is part of a standardized

contract between Warranty Plaintiffs and the members of the Warranty Class on the one hand,

and Defendant on the other hand.

69.    All conditions precedent to Defendant's liability under this contract, including

notice, have been performed by Warranty Plaintiffs and the Warranty Class.

70.    Defendant breached the terms of this contract, including the express warranties,

with Warranty Plaintiffs and the Warranty Class by not providing the product with the advertised

benefits described above.

71.   As a result of Defendant's breach of its contract and warranties, Warranty Plaintiffs and the Warranty Class have been damaged in the amount of the purchase price of Vita Coco Products.

72.   At all times relevant to this action, Defendant made false, misleading and deceptive representations in breach of its express warranties and in violation of state express warranty laws, including:

(a)    Ak. St. § 42.02.313;

(b)    Ariz. Rev. Stat. Ann. § 47-2313;

(c)    Ark. Code Ann. § 4-2-313;

(d)    California Commercial Code § 2313;

(e)    Colo. Rev. St. § 4-2-313;

(f)    Conn. Gen. Stat. Ann. § 42a-2-313;

(g)    D.C. Stat. § 28:2-313;

(h)    Haw. Rev. Stat. § 490:2-313;

(i)    Ind. Code § 26-1-2-313;

(j)    Kansas Stat. Ann. § 84-2-313;

(k)    La. Civ. Code. Ann. Art. 2520;

(l)    11 Maine Rev. Stat. Ann. § 2-313;

(m)    Mass. Gen. Laws Ann. 106 § 2-313;

(n)    Minn. Stat. Ann. § 336.2-313;

(o)    Miss. Code Ann. § 75-2-313;

(p)    Missouri Rev. Stat. §400.2-313;

(q)    Mont. Code Ann. 30-2-313;

(r)     Neb. Rev. Stat. § 2-313;

(s)     Nev. Rev. Stat. § 104.2313;

(t)     N.H. Rev. Stat. § 382-A:2-313;

(u)     N.J. Stat. Ann. 12A:2-313;

(v)     N.M. Stat. Ann. § 55-2-313;

(w)     N.Y. U.C.C. Law § 2-313;

(x)     N.C. Gen. Stat. Ann. § 25-2-313;

(y)     Okla. Stat. Ann. Tit. 12A, § 2-313;

(z)     Or. Rev. Stat. § 72.3130;

(aa)    Pa. Stat. Ann. Tit. 13, § 2313;

(bb)    Rd. Stat. § 6A-2-313;

(cc)    S.C. § 36-2-313;

(dd)    S.D. Cod. Laws. § 57A-2-313;

(ee)    Tenn. Code Ann. § 47-2-313;

(ff)    Tex. Bus. & Com. Code Ann. § 2.313;

(gg)    Ut. Code Ann. § 70A-2-313;

(hh)    Vt. Stat. Ann. § 2-313;

(ii)    Wa. Ann. 62A.2-313;

(jj)    W. Va. Code § 46-2-313;

(kk)    Wyo. Stat. 34.1-2-313.

73.     The above statutes do not require privity of contract in order to recover for breach of express warranty.

74. As a result of Defendant's conduct, Warranty Plaintiffs and members of the Warranty Class were damaged.

75. Within a reasonable time after they knew or should have known of such breach, Warranty Plaintiffs, on behalf of themselves and members of the Class, placed Defendant on notice thereof.

## THIRDCLAIM
### Negligent Misrepresentation

76. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

77. Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Nationwide Class.

78. In making the representations of fact to Plaintiffs and members of the Nationwide Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

79. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Nationwide Class.

80. Plaintiffs and members of the Nationwide Class relied upon these false representations and nondisclosures by Defendant when purchasing Vita Coco Products, which reliance was justified and reasonably foreseeable.

81. As a result of Defendant's wrongful conduct, Plaintiffs and members of the Nationwide Class have suffered and continue to suffer economic losses and other general and

specific damages, including but not limited to the amounts paid for Vita Coco Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## FOURTHCLAIM
### Unjust Enrichment

82.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

83.    By its wrongful acts and omissions, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Nationwide Class, who did not receive the goods to which they were entitled for the payments they made to Defendant, and thus Plaintiffs and members of the Nationwide Class were unjustly deprived of money paid to Defendant.

84.    It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from its deceptive, misleading, unfair and unlawful conduct alleged herein.

85.    Plaintiffs and members of the Nationwide Class seek restitution from Defendant, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## RELIEF REQUESTED

Accordingly, Plaintiffs, on behalf of themselves and the members of the Classes, seek judgment as follows:

1.    Certifying the Classes as requested herein, certifying Plaintiffs as the representatives of the Nationwide Class, certifying Warranty Plaintiffs as representatives of the Warranty Class, and appointing Plaintiffs' counsel as counsel for the Classes;

2.    Ordering that Defendant is financially responsible for notifying all members of the Classes of the alleged misrepresentations and omissions set forth herein;

3.      Awarding Plaintiffs and the members of the Classes compensatory damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and members of the Classes;

5.      Awarding declaratory and injunctive relief, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful or unlawful;

6.      Awarding to Plaintiffs and the Classes punitive damages;

7.      Ordering Defendant to engage in corrective advertising;

8.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

10.     Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Classes

demand a trial by jury as to all matters so triable.

Dated:  October 31, 2011

Respectfully submitted,

Bernard Persky
Hollis L. Salzman
William V. Reiss
Amy Garzon
**LABATON SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone:   (212) 907-0700
Facsimile:   (212) 818-0477
bpersky@labaton.com
hsalzman@labaton.com
wreiss@labaton.com
agarzon@labaton.com

Joe R. Whatley, Jr., Esq.
Patrick J. Sheehan, Esq.
**WHATLEY DRAKE & KALLAS, LLC**
380 Madison Avenue, 23rd Floor
New York, New York 10017
Telephone:   (212) 447-7070
Facsimile:   (212) 447-7077
jwhatley@wdklaw.com
psheehan@wdklaw.com

Mila F. Bartos
Danielle A. Stoumbos
**FINKELSTEIN THOMPSON LLP**
James Place
1077 30th Street, N.W., Suite #150
Washington, DC  20007
Telephone:   (202) 337-8000
Facsimile:   (202) 337-8090
mbartos@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com

*Attorneys for Plaintiffs and the Putative
Classes*

- 25 -

# EXHIBIT A

Coconut Waters Reviewed, Rated, and Compared                                    Page 1 of 3



**ConsumerLab.com**®
Celebrating 12 Years of Reporting 1999 – 2011
Our Mission: To identify the best quality health and nutritional products through independent testing.

Home   Product Tests   -- Select a Review --          Warnings   Encyclopedia   Newsroom   Where to Buy      Type Search Term Here   SEARCH

**Product Review:** *Coconut Waters Review -- Tests of O.N.E., Vita Coco, and Zico*

Initial Posting: 8/2/11

**Sections:** Jump to a section by clicking on its name.



- What It Is
- How It's Used
- Quality Concerns and What CL Tested
- What CL Found
- *Test Results by Product*
- Concerns and Cautions
- Full list of Ingredients by Product
- How Products Were Evaluated

**What It Is:**
Coconut water – an increasingly popular beverage option for athletes and natural food lovers – is the clear liquid that sloshes around the inside of immature (green) coconuts. On the beaches of Rio and other tropical locales, you can drink it straight from the coconut. Many grocery and health food stores sell it in cans, bottles, or other more modern packaging.

Coconut water offers an unusual blend of nutrients. It's especially rich in potassium. One cup provides about 500 mg, roughly what you'd get from a banana or a cup of orange juice. It also contains sodium and magnesium and small amounts of phosphorus and vitamin C. It contains no cholesterol and almost no fat, but it does provide a little protein. Natural sugars make it mildly sweet, although it is relatively low in calories compared to typical fruit juices. Coconut water is very different from coconut milk, which is made from the pressed meat of mature coconuts and contains significant amounts of fat from coconut oils.

**How It's Used:**
Coconut water is a refreshing drink. Because it contains sugar as well as potassium and other electrolytes, it is sometimes marketed as a sports drink for rehydration during and after exercise. It may also be sought out by people who want more potassium in their diets. (See ConsumerLab.com Product Review of Potassium Supplements for more information about potassium.)

Rehydration – How Good Is Coconut Water?
When you sweat, you lose minerals as well as water. It only makes sense that a combination of water and minerals is the best way to replenish your supplies. The main mineral in sweat is sodium. In fact, there is about ten times as much sodium in sweat as potassium. So is potassium-rich coconut water really a good way to rehydrate?

A study that compared coconut water to both plain water and a rehydration drink containing about four times more sodium but far less potassium than coconut water found that all three provided adequate rehydration (Saat, J Physio Anthro 2002). However, blood sugar levels were restored faster with coconut water and the rehydration drink than with water. An advantage of the coconut water was its palatability. Subjects found it to be sweeter than the sports drink, and it was less likely to upset their stomachs.

The generally small amount of sodium in most coconut water products should still be a concern for anyone trying to rehydrate after strenuous exercise. Rehydration drinks like Gatorade typically contain 110 mg of sodium per an 8 oz cup (240 mL) serving, and even greater amounts may be useful. Commercial coconut waters made from pure coconut water (not concentrate) claim to contain about 40 mg to 60 mg of sodium in a slightly larger serving (330 mL). And because coconut water is very low in protein or branched chain amino acids, it should also not be considered a sports "recovery" drink to rebuild muscle protein. In large amounts, coconut water may have a mild laxative effect. Obviously, this would make it less effective at replenishing fluids in the long run.

**Quality Concerns and What CL Tested:**
Because coconut water is a natural food product, many different factors can affect the nutritional content. To assess the accuracy of the nutritional labeling of coconut waters, ConsumerLab.com purchased three popular coconut water products. We tested levels of sugars, potassium, sodium, and magnesium. Products were also checked for potential contamination with lead. ConsumerLab.com tests all botanical products for this heavy metal, a common contaminant in such products.

**What CL Found:**
Among the three products tested, only Zico *Natural Pure Premium Coconut Water* (414 mL bottle) passed all of our tests. Two others failed to provide their claimed amounts of minerals. No detectable amounts of lead were found in any of the products. Shortcomings of the products were confirmed in two independent laboratories:

- *O.N.E. Coconut Water* (330 mL tetra pak) provided only 11 mg of sodium – far less than the 60 mg it promised. It also came up short on magnesium, providing 19 mg instead of the listed 25 mg.
- *VitaCoco 100% Pure Coconut Water* (330 mL tetra pak) was also short on sodium (only 24 mg of its listed 40 mg) and magnesium (only 26 mg of its listed 40 mg). It also contained 16% less potassium than claimed 571 mg instead of the listed 680 mg – although this amount of variation (+/- 20%) is permitted by the FDA for naturally occurring ingredients in food products.

"A Good Source of Electrolytes"?
The front of the package of *O.N.E. Coconut Water* claims the product is a "Good Source of Electrolytes." The FDA allows products that provide 10% to 19% of the Daily Value (DV) of a nutrient to claim to be a "good source" of that nutrient. O.N.E is a good source of only one electrolyte potassium, of which it provides

19% of the 3,400 mg adult DV for potassium. To be a good source of sodium, O.N.E. would need to provide at least 240 mg per daily serving; we found it to have only 11 mg. Likewise, O.N.E. was found to have 5% (19 mg) of the daily value of magnesium.

*VitaCoco 100% Pure Coconut Water* claims to provide more electrolytes than sports drinks. But it, too, had little sodium. While its label claims 10% of the DV for magnesium, which would be 40 mg, CL found it to only have 26 mg disqualifying it as a good source of the mineral. It is true that, like all coconut waters, this product has a lot more potassium than a sports drink; however, it has much less sodium. An equal amount (330 mL) of *Original Gatorade*, for example, would provide about 150 mg of sodium, compared to *Vita Coco's* 24 mg.

A bottle of *Zico Natural* provided a more even balance of electrolytes. The 414 mL bottle contained 160 mg of sodium, several times more than we found in O.N.E. and *Vita Coco* products and close to the amount you would get from an equal amount of *Gatorade*. It also had slightly more magnesium (35 mg) than the two other products.

Be aware that *Zico* sells two different Natural products. We tested the one that comes in a 414 mL bottle and is made from coconut water concentrate. The other is a 330 mL tetra pak containing pure coconut water, similar to the other two other products we tested. The *Zico Natural* tetra pak lists a much lower amount of sodium (60 mg) than the bottled *Zico Natural* (160 mg).

Cost
Coconut waters are not cheap. The most expensive product that we tested was the 414 mL bottle of *Zico Natural* at $2.50. The 330 mL tetra pak of O.N.E. was the least expensive at $1.73. A 330 mL tetra pak of *Vita Coco* cost $1.90.

Taste
Coconut water is typically consumed cold, but CL staff drank the products at room temperature to get a better sense of their inherent tastes. The first thing we noticed was a slight variation in the colors of the waters: O.N.E. had a slight pink hue; *Vita Coco* had a very faint yellow hue, and *Zico Natural* had no color but was slightly cloudy. All were mildly sweet. O.N.E. had a slightly sour taste, and *Vita Coco* had a similar but less pronounced tartness. *Zico Natural* had a milder, less sour but slightly more salty taste, with a bit of a nutty flavor. Its taste is likely the result of "natural flavors" listed as an ingredient as well as its higher sodium content.



O.N.E., Zico, and Vita Coco

Overall Findings
All of the tested products were pleasant tasting. They are certainly a healthier choice than a can of soda or a fruit drink, which contain twice the amount of sugar (a 12 oz., or 355 mL, can of Coke has 39 grams of sugar). However, they are also somewhat more expensive. Coconut waters are a good source of potassium. If you are using coconut water to help rehydrate, the bottled *Zico Natural* in a bottle is your best bet due to its more substantial sodium content; our tests found that it contains 15 times as much sodium as O.N.E., for example. Despite a somewhat larger serving size, *Zico Natural* was in the same low-calorie range (60) as the other two products. *Zico* was also the only product to live up to the listed amounts of the nutrients we tested. The only drawback is that it's a little more expensive than the other two.

Test Results by Product:
Listed below are the test results of the three coconut waters selected for review by ConsumerLab.com, listed alphabetically. Also shown are the labeled serving sizes and claimed amounts of the key nutrients. If a product is listed as Approved, it was found to contain the labeled amounts of tested nutrients (sugar, potassium, sodium, and magnesium) and did not exceed CL's stringent criteria for lead contamination. The full list of ingredients and nutrients is available for each product by clicking on the word Ingredients in the first column. For more information about testing go to How Products Were Evaluated.

| CONSUMERLAB.COM RESULTS FOR COCONUT WATER PRODUCTS | | | | | |
|---|---|---|---|---|---|
| Click on "Price Check" beneath a product name to find a vendor that sells it. | | | | | |
| Product Name and Serving Size on Label<br><br>Distributor<br><br>Click on "Ingredients" for Full List | Claimed Amount of Key Nutrients per Suggested Serving on Label | – TEST RESULTS – (See How Products Were Evaluated) | | | |
| | | OVERALL RESULTS: APPROVED (Passed) or NOT APPROVED (Failed) | Met Claim For Electrolytes and Sugars ✓ = Met Claim<br><br>If Did Not Meet Claim, Amount Found and Percent of Claim | Did Not Exceed Contamination Limits for Lead | Cost per Serving<br><br>(Additional Ingredient Information on Label) |
| O.N.E. Coconut Water (330 mL tetra pak carton)<br><br>Dist. by One World Enterprises, LLC Ingredients | Potassium:  670 mg<br>Sodium:  60 mg<br>Magnesium:  25 mg<br><br>Sugars:  14 g | NOT APPROVED | Potassium:  ✓<br>Sodium:  11 mg (18.3%)<br>Magnesium:  19 mg (76.6%)<br><br>Sugars:  ✓ | ✓ | $1.73<br><br>Natural coconut water |
| VitaCoco, 100% Pure Coconut Water (330 mL tetra pak carton)<br><br>Dist. by All Market Inc. Ingredients | Potassium:  680 mg<br>Sodium:  40 mg<br>Magnesium:  40 mg<br><br>Sugars:  15 g | NOT APPROVED | Potassium:  ✓<br>Sodium:  24 mg (59%)<br>Magnesium:  26 mg (64.4%)<br><br>Sugars:  ✓ | ✓ | $1.90<br><br>Natural coconut water with added vitamin C (230% of Daily Value of vitamin C²) |

· Coconut Waters Reviewed, Rated, and Compared                                    Page 3 of 3

| | | | | | | |
|---|---|---|---|---|---|---|
| Zico Natural (Bottle), Pure Premium Coconut Water (414 mL bottle)  Dist. by ZICO Beverages, LLC Ingredients $ Price Check | Potassium: 569 mg Sodium: 160 mg Magnesium: 35 mg  Sugars: 12 g  Per 330 mL:* Potassium: 454 mg Sodium: 128 mg Magnesium: 28 mg  Sugars: 9.6 g | APPROVED | Potassium: ✓ Sodium: ✓ Magnesium: ✓  Sugars: ✓ | | ✓ | $2.50 ($1.99 based on 330 mL serving*)  Coconut water concentrate with natural flavors |

* Calculated for comparison to O.N.E. and VitaCoco products which are smaller sizes (330 mL) than Zico (414 mL bottle).

† Potassium amount found was lower than listed but within the naturally occurring levels allowed by Food and Drug Administration (FDA) (+/- 20% of labeled amount). Amount found was 571 mg, which is 84% of the listed amount (680 mg).

‡ Not tested, but claimed on label. Daily Value of Vitamin C is 60 mg. (230% of DV = 138 mg of Vitamin C.)

Unless otherwise noted, information about the products listed above is based on the samples purchased by ConsumerLab.com (CL) for this Product Review. Manufacturers may change ingredients and label information at any time, so be sure to check labels carefully when evaluating the products you use or buy. If a product's ingredients differ from what is listed above, it may not necessarily be of the same quality as what was tested.

The information contained in this report is based on the compilation and review of information from product labeling and analytical testing. CL applies what it believes to be the most appropriate testing methods and standards. The information in this report does not reflect the opinion or recommendation of CL, its officers or employees. CL cannot assure the accuracy of information provided to it by third parties. Liability to any person for any loss or damage caused by errors, omissions, or inaccuracies in this report is hereby disclaimed.

Copyright ConsumerLab.com, LLC, 2011. All rights reserved. Not to be reproduced, excerpted, or cited in any fashion without the express written permission of ConsumerLab.com LLC.

**Concerns and Cautions:**
As noted earlier, in large amounts, coconut water may have a mild laxative effect.

To further assist consumers, ConsumerLab.com licenses its flask-shaped CL Seal of Approved Quality (see The CL Seal) to manufacturers for use on labels of products that have passed its testing. ConsumerLab.com periodically re-evaluates these products to ensure their compliance with ConsumerLab.com's standards.

Information on this site is provided for informational purposes only. It is not an endorsement of any product nor is it meant to substitute for the advice provided by physicians or other healthcare professionals. The information contained herein should not be used for diagnosing or treating a health problem or disease.

#128#

Follow ConsumerLab.com on Twitter    |    Become a Fan on Facebook
Home  |  Product Tests  |  Brands Tested  |  Encyclopedia  |  Where to Buy Products  |  Group Subscription  |  Join  |  Sign in
News  |  Recalls & Warnings  |  Raw Materials Tests  |  Testing Programs  |  The CL Seal  |  CL Survey  |  About Us
In The News  |  RDAs  |  Gift Memberships  |  Join Free Newsletter  |  Privacy Policy  |  Site Map  |  Testimonials  |  Contact Us/Help

©2011 ConsumerLab.com, LLC. All rights reserved. A single copy of a report may be printed for personal use by the subscriber.
It is otherwise unlawful to print, download, store or distribute content from this site without permission.
ConsumerLab.com name and flask logo are both registered trademarks of ConsumerLab.com, LLC.

# EXHIBIT B







# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY B. FISHBEIN, KATRINA GARCIA, CATALINA SALDARRIAGA and RUSSELL MARCHEWKA, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ALL MARKET INC. d/b/a VITA COCO, <br><br> Defendant. | Case No. 11-Civ-5580 |



## PROOF OF SERVICE

I, William V. Reiss, hereby certify that on October 31, 2011, I caused a true and correct

copy of the foregoing **AMENDED CLASS ACTION COMPLAINT** to be served by email and

regular mail on the following parties:

Brian J. Howard
Joseph R. Di Salvo
The Di SALVO GROUP, PLLC
411 West 14th Street, 4th Floor
New York, New York 10014
Telephone: (917) 855-6833
bhoward@disalvo-group.com

Anthony DiLello
Tancred Schiavoni
Scott Voelz
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
(212)-326-2267
Fax: (212)-326-2061

By: William V. Reiss

U S DISTRICT COURT SDNY

2011 OCT 31  P 4: 11

RECEIVED