## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY B. FISHBEIN, KATRINA GARCIA, CATALINA SALDARRIAGA AND RUSSELL MARCHEWKA, on Behalf of Themselves and All Others Similarly Situated,<br><br>                           Plaintiffs,<br><br>     v.<br><br>ALL MARKET INC. d/b/a VITA COCO,<br><br>                         Defendant. | Case No. 11-Civ-5580 (JPO) |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ..................................................................................................... 2

        A.      The Litigation ............................................................................................. 2

        B.      Settlement Negotiations ............................................................................. 4

III.    THE TERMS OF THE PROPOSED STIPULATION ........................................... 4

        A.      Product or Cash Option .............................................................................. 4

                1.      Settlement Class Members' Cash Recovery ................................. 5

                2.      Cash Settlement Fund ................................................................... 5

                3.      Cash Settlement Fund: Insufficient or Excess Funds ................. 5

                4.      Settlement Class Members' Product Voucher Recovery ............. 5

                5.      Product Voucher Settlement Fund ............................................... 6

                6.      Product Voucher Settlement Fund: Insufficient or Excess Funds ............. 6

        B.      Prospective Relief & Corrective Measures ................................................ 6

        C.      Corrective Measures Implemented Thus Far .............................................. 7

        D.      Cy Pres ....................................................................................................... 8

        E.      Attorneys' Fees and Expenses and Class Representative Incentive Awards .......... 8

        F.      Costs of Notice and Administration ........................................................... 9

        G.      Release ........................................................................................................ 9

IV.     THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
        FOR CONDITIONALLY CERTIFYING A SETTLEMENT CLASS ........................... 10

        A.      The Proposed Settlement Class, Class Representatives, and Class Counsel ........ 10

        B.      The Requirements for Certification of a Settlement Class are Satisfied .............. 10

        C.      The Proposed Settlement Class Satisfies Rule 23(a) ................................ 11

1.     The Settlement Class Is So Numerous That It Is Impracticable to Bring All Settlement Class Members Before the Court.......................... 11

2.     Plaintiffs and the Settlement Class Share Common Legal and Factual Questions................................................................................. 12

3.     Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.................................................................................. 13

4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.................................................................................. 13

D.     The Proposed Settlement Satisfies Rule 23(b).................................... 14

1.     Common Questions of Law and Fact Predominate ................................. 14

2.     Class Resolution of this Action is Superior .............................................. 15

V.     THE COURT SHOULD APPOINT LABATON SUCHAROW AND WHATLEY DRAKE AS CLASS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g) .............................................................................................. 16

VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...................................................................................................... 16

A.     The Settlement of Complex Litigation Is Favored ............................... 16

B.     The Standard for Preliminary Approval .............................................. 17

C.     Preliminary Approval of the Proposed Settlement Should be Granted ............... 18

1.     The Proposed Settlement Is the Result of Arm's-Length Negotiations Conducted by Highly Experienced Counsel....................... 18

2.     The Proposed Settlement Falls Within the Range of Possible Approval ...................................................................................................... 20

VII.     THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED .................................................................. 21

A.     The Notice Program Will Provide Reasonable Notice, Including Direct Notice, to All Identifiable Settlement Class Members ......................................... 22

1.     Direct Notice Will be Provided to Settlement Class Members for Whom Records Provide Address Information........................................... 23

2.     Notice Will be Posted on a Designated Website ..................................... 23

3.     Toll-Free Telephone Support................................................................... 24

4.      Notice will be Published in USA Today .......................................... 24

5.      PR Newswire Press Releases ....................................................... 24

6.      Internet Advertisements ............................................................... 25

7.      Mobile Phone Advertisements ..................................................... 25

8.      Vita Coco's Website .................................................................... 25

9.      Vita Coco Facebook Page ........................................................... 25

10.     Vita Coco's Twitter Account ....................................................... 25

11.     Class Counsel Press Release ....................................................... 26

12.     Class Counsel's Websites ............................................................ 26

B.      The Proposed Notice Adequately Informs Settlement Class Members of
the Proposed Class Action Settlement ................................................... 26

C.      The Notice Adequately Explains the Procedures to Request Exclusion or
to Object ................................................................................................. 26

D.      The Notice Adequately Informs the Settlement Class Members of the
Final Approval Hearing .......................................................................... 28

E.      The Notice Program Should Be Approved ............................................ 28

VIII.   PROPOSED TIMETABLE ................................................................................ 29

IX.     CONCLUSION ................................................................................................... 30

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................11, 14, 15, 16

*Attenborough v. Construction and General Building Laborers' Local 79*,
  238 F.R.D. 82 (S.D.N.Y. 2006) .........................................................................................14

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001) ...............................................................................................16

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .......................................................................................17

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) .....................................................................................21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..........................................................................................18, 21

*Consolidated Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .................................................................................................11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ..............................................................................................10

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992) ...............................................................................................13

*Glaser v. Cincinnati Milacron, Inc.*,
  808 F.2d 285 (3d Cir. 1986) ...............................................................................................11

*Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................ *passim*

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000) .................................................................................................18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  210 F.R.D. 476 (S.D.N.Y. 2002) .......................................................................................12

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................................................19

*In re Initial Public Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .........................................................................................20

iv

*In re Joint E. & S. Dists. Asbestos Litig.*,
    878 F. Supp. 473 (E.D.N.Y. 1995)T ....................................................19

*Karvaly v. eBay Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) ..........................................................17

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ..............................................................18

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ............................................................15

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .............................................1, 17, 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................19, 21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ..............................................................11

*Sullivan v. D.B. Investments, Inc.*,
    2011 U.S. App. LEXIS 25185 (3d Cir. Dec. 20, 2011) ....................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .....................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..........................................................19, 22

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...............................................................11

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ..........................................................................16

## STATUTES

28 U.S.C. § 1715 .....................................................................................29

28 U.S.C. 1746 ...................................................................................4, 27

Fed. R. Civ. P. 23 ............................................................................ *passim*

## OTHER

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2005) ................. *passim*

## I.   __INTRODUCTION__

Plaintiffs[1] submit this memorandum in support of their motion for an order preliminarily approving the proposed Stipulation of Settlement ("Stipulation") with defendant All Market Inc. d/b/a Vita Coco ("Defendant" or "Vita Coco").  The Stipulation provides for substantial economic relief to the putative class (the "Class"), including cash payments and product vouchers.  Further, the Stipulation provides for non-monetary relief in the form of a program which will change the labels and advertising of Vita Coco Products to more clearly describe the variable nature of coconut water, as well as a quality control program which will ensure regular and independent testing.  Vita Coco has additionally agreed to distribute to charitable organizations that promote healthy living, a total of $3 million worth of Vita Coco products.  The total value of the Stipulation is in excess of $10 million.

At the preliminary approval stage, the Court need only "make a *preliminary* determination of the fairness, reasonableness and adequacy of the settlement."  David F. Herr, Annotated MANUAL FOR COMPLEX LITIGATION § 21.632 at 321 (4th ed. 2005) (hereinafter the "*Manual*") (emphasis added); *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*").

As detailed below, the Stipulation was the product of hard-fought, arm's-length negotiations between the Parties and will fairly resolve this litigation through the certification of a Settlement Class comprised of all persons or entities who made retail purchases of Vita Coco Products during the Settlement Class Period.  The proposed Settlement Class meets all of the requirements for certification of a settlement class and the proposed class notice program meets

---

[1] Unless otherwise stated herein, all capitalized terms shall have the same meanings as set forth in the Stipulation of Settlement between Plaintiffs and Vita Coco dated February 7, 2012.

all the requirements of Fed. R. Civ. P.  23(c)(2)(B) and 23(e)(B), providing the best practicable notice under the circumstances.

Plaintiffs  therefore move this Court for an order:  (1) conditionally certifying the settlement class; (2) granting preliminary approval of the proposed settlement; (3) approving the proposed notice program and directing that notice be disseminated to the Settlement Class as provided therein; (4) appointing Plaintiffs Fishbein, Garcia, Saldarriago, and Marchewka as class representatives and Labaton Sucharow LLP and Whatley Drake & Kallas, LLC as Class Counsel; and (5) appointing Garden City Group as the Class Action Settlement Administrator.

## II.   BACKGROUND

### A.   The Litigation

On August 10, 2011, Plaintiff Fishbein filed a complaint against Vita Coco in the United States District Court for the Southern District of New York.  A related complaint which made similar allegations against Defendant was subsequently filed in the Southern District of Florida on August 24, 2011 (*see Garcia v. All Market, Inc*., No. 11-cv-23058 (S.D. Fla.)) (the "Garcia action").  On August 31, 2011, Plaintiff Fishbein made a motion with the United States Judicial Panel on Multidistrict Litigation for transfer to and consolidation of the Garcia action, as well as all related actions, in the Southern District of New York.

On September 9, 2011, a complaint alleging similar allegations against Defendant, which was initially filed on August 8, 2011 in Los Angeles Superior Court, was removed by Defendant to the Central District of California (see *Shenkman v. All Market, Inc*., No. 11-cv-07147 (C.D. Cal.)).  On October 4, 2011, plaintiff in the Shenkman action moved to remand the case to Los Angeles Superior Court.  Plaintiff's motion to remand was granted on November 4, 2011 (see *Shenkman v. All Market, Inc*., No. BC467166 (Los Angeles Superior Court)) (the "Shenkman action").

On September 21, 2011, Judge Rakoff entered a Civil Case Management Plan in this case which set forth deadlines for, *inter alia*, discovery, joinder of parties and amended pleadings, expert disclosures, and class certification.  D.E. 8.  The case was reassigned to Judge J. Paul Oetken on September 30, 2011.  D.E. 10.

On October 31, 2011, an Amended Class Action Complaint (the "Amended Complaint") was filed by Plaintiffs Fishbein, Garcia, Saldarriago, and Marchewka.[2]  D.E. 14.  The Amended Complaint alleges that Vita Coco Products are marketed as "super hydrating," "nutrient-packed," "mega electrolyte," "life-enhancing," and healthy "super water" that should be regularly consumed to help maintain optimal hydration.  Plaintiffs allege that these claims are false and misleading because independent studies allegedly show that Defendant's Vita Coco Products are: (1) mislabeled and in fact offer less sodium (a critical electrolyte), magnesium, and potassium than stated on its nutritional label; and (2) do not hydrate more effectively than less expensive sports drinks.  The Amended Complaint asserts claims for:  (1) violations of state consumer protection laws; (2) breach of express warranty; (3) negligent misrepresentation; and (4) unjust enrichment.  The Amended Complaint seeks monetary relief and injunctive relief.

During a consultation with the Court on November 2, 2011, the Parties requested a 60 day extension of all deadlines set forth in the September 21, 2011 Civil Case Management Plan (D.E. 8) in order to pursue mediation in hopes of resolving this litigation.  On November 8, 2011, the Court entered an Amended Civil Case Management Plan which granted the Parties' request. D.E. 12.

On December 9, 2011, the Parties submitted a joint letter to the Court requesting a stay of all litigation deadlines in light of the settlement in principle reached between the Parties.  On

---

[2] The filing of the Amended Complaint obviated the need for an MDL motion and the MDL motion was therefore withdrawn on November 14, 2011.

December 13, 2011, the Court entered an Order extending, by 30 days, all deadlines which had not yet passed by December 9, 2011.  D.E. 18.  And, on January 17, 2012, the Parties submitted a joint letter to the Court requesting a stay of the litigations deadlines for an additional 60 days.  On January 18, 2012, the Court entered an Order granting this request.  D.E. 19.

### B.   Settlement Negotiations

The parties began settlement discussions in or about September 2011.  *See* Declaration of Bernard Persky, Esq. in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Persky Decl."), ¶ 2.  On November 8, 2011, the Parties participated in an all-day mediation conducted by Judge Kathleen Roberts of JAMS in New York, New York.  Since that time, the Parties participated in numerous telephonic negotiating sessions both with Judge Roberts' assistance and independently.  *Id*.  On December 7, 2011, the parties reached a settlement in principle and executed a term sheet.  *Id.* ¶ 3.  For two months thereafter, the Parties continued to negotiate the terms of the settlement.  *Id.*  Counsel for Plaintiffs and Vita Coco signed the Stipulation with an execution date of  February 7, 2012.  *Id*. ¶ 4.

### III.   THE TERMS OF THE PROPOSED STIPULATION

The following is a summary of the principal terms provided in the Stipulation.  The settlement relief, valued at over $10 million, includes cash payments, product vouchers, *cy pres* relief and non-monetary injunctive relief, as well as the payment of Plaintiffs' attorneys' fees and expenses, and the costs of notice and claims administration.

### A.   Product or Cash Option

To be eligible for a cash or product voucher payment, the Settlement Class Member must timely submit a Claim Form containing his or her name and mailing address, which attests, pursuant to 28 U.S.C. 1746 under penalty of perjury, that the Settlement Class Member purchased one or more Vita Coco Products during the Settlement Class Period.  Stipulation §

IV.A.  Under the Stipulation, Vita Coco will provide significant monetary benefits and product vouchers to Settlement Class Members as follows:

### 1.  Settlement Class Members' Cash Recovery

Settlement Class Members who provide Proof of Purchase shall be entitled to a cash refund in the amount of the purchase(s) up to a maximum of $25.00 per Settlement Class Member.  *Id*. § IV.A.1.(a).  Settlement Class Members who do not provide Proof of Purchase shall be entitled to a cash payment of $6.00 per Settlement Class Member.  *Id*. § IV.A.1.(b).

### 2.  Cash Settlement Fund

No later than five (5) days before the date set for the Final Approval Hearing, Defendant shall pay $1 million in trust into an interest bearing account with Citibank, N.A.  *Id*. § IV.A.2.(a). The Cash Settlement Fund shall be applied first to pay in full any necessary taxes and tax expenses and then to pay authorized Claimants and any others as allowed by the Stipulation.  *Id*. § IV.A.2.(b).

### 3.  Cash Settlement Fund: Insufficient or Excess Funds

If the total amount of valid and eligible claims exceeds the Cash Settlement Fund, then each Claimant's award shall be proportionately reduced.  *Id*. § IV.A.3.(a).  If, after all valid claims are paid, money remains in the Cash Settlement Fund, the remaining amount shall be paid to one or more charitable organizations that promote healthy living as mutually agreed by the Parties and approved by the Court pursuant to the *cy pres* doctrine.  *Id*. § IV.A.3.(b)

### 4.  Settlement Class Members' Product Voucher Recovery

Settlement Class Members who provide Proof of Purchase shall be entitled to receive product vouchers with a retail value in the amount of the purchase(s) up to a maximum of $36.00 per Settlement Class Member.  *Id*. § IV.A.4.(a).  Settlement Class Members who do not provide

Proof of Purchase shall be entitled to product vouchers with a retail value of $8.00 per

Settlement Class Member. *Id*. § IV.A.4.(b).

### 5. Product Voucher Settlement Fund

Defendant shall provide $1 million worth of product vouchers (calculated based on the

retail prices of Vita Coco Products derived from current IRI data). Each voucher shall have a

face value of $2.00 (sufficient to obtain a single 330 ml unit), which may, at the Claimant's

discretion, be applied towards the purchase of any larger sized container. Vouchers shall be

valid for a period of three (3) months from issuance. *Id*. § IV.A.5.(a).

### 6. Product Voucher Settlement Fund: Insufficient or Excess Funds

If the total amount of valid and eligible product voucher claims exceeds the Product

Voucher Settlement Fund, then each Claimant's award shall be proportionately reduced. *Id*. §

IV.A.6.(a). If the total amount of product vouchers redeemed within three (3) months of

issuance does not exceed $1 million in retail value based on current IRI data, then Vita Coco

Products in an amount equal to the retail value of the outstanding balance of the Product Voucher

Settlement Fund shall be distributed by Vita Coco over the next nine (9) months in the form of

Vita Coco Product giveaways near retail outlets which sell Vita Coco Products in the top 15 U.S.

markets. *Id*. § IV.A.6.(b). Any Vita Coco employee who participates in any such product

giveaways shall be trained, upon inquiry, to disclose that Vita Coco Products are being

distributed as part of the class action settlement, rather than as a sampling or marketing program

and there shall be prominently displayed a sign nearby referring to the distribution as part of the

class action settlement. *Id*.

### B. Prospective Relief & Corrective Measures

Beginning December 7, 2011 and running for a period of five years from that date, Vita

Coco has agreed to: (1) change the labels and advertising of its Vita Coco Products to more

clearly describe the variable nature of coconut water by, among other things, creating

geographically distinct labeling and destroying existing inventories of labels; and (2) increase

quality control of Vita Coco Products, through measures including, but not limited to, hiring

additional quality control personnel, creating a robust and regular independent testing program,

and rejecting non-compliant Vita Coco Products.  *Id*. § IV.B(1).  Vita Coco has also agreed to

provide Class Counsel, on an annual basis, a report of the cost and expenditures associated with

this program.  Vita Coco has also agreed to refrain from making any representations that Vita

Coco Products are more hydrating than sports drinks unless it has scientific evidence supporting

the claim.  *Id*.  Vita Coco will pay no less than $4 million implementing this extensive five year

injunctive relief program.  *Id*.

### C.     Corrective Measures Implemented Thus Far

Based upon the term sheet executed by the parties on December 7, 2011, Vita Coco has

created revised packaging which includes region specific nutritional labeling.  Declaration of

Jose A. Carvalho, at ¶ 3.  It expects that products using the new labels will be available in the

marketplace in the second quarter of 2012.  *Id.*

Vita Coco is also revising its Vita Coco Products' packaging and marketing materials,

including its multi-pack labeling and design, by eliminating direct comparisons to sports drinks

and removing several comparative assertions including that Vita Coco Products have "15 times

the potassium found in sports drinks" and "more electrolytes than leading sports drinks."  *Id.* at ¶

4.  To date, Vita Coco has incurred at least $110,000 in costs redesigning the labeling of Vita

Coco Products, and expects to spend over $2 million in costs relating to the disposal of old

labeling and the introduction of the new labeling into the marketplace.  *Id.* at ¶ 5.

Vita Coco has also implemented an enhanced quality control program by increasing the

frequency of testing of Vita Coco Products, rejecting noncompliant products from its suppliers,

and exercising greater supplier oversight, including directing suppliers to only buy and use certain coconuts.  *Id.* at ¶ 6.  At a cost of $50,000, Vita Coco has contracted with a quality control expert who is presently crafting Vita Coco's quality control manuals and protocols.  *Id.* at ¶ 7.  Vita Coco has assigned a full-time employee, at a cost of $150,000 per year, to implement those quality controls.  *Id.*  In addition, Vita Coco is currently recruiting a full-time employee to assist in the implementation of those quality control protocols at an estimated salary of $80,000.  *Id.*

### D.     Cy Pres

Given the difficulty and expense in locating Settlement Class Members and otherwise meeting the requirements of a distribution under the *cy pres* doctrine, Defendant shall distribute to one or more charitable organizations that promote healthy living, a total of $3 million worth of Vita Coco Products (at a rate of $1 million in retail value of product each year), an amount which will be calculated based on the retail prices derived from current IRI data.  Defendant shall distribute Vita Coco Products to the agreed upon charities at a rate and on the dates mutually convenient to Defendant and the charities involved.  The charities shall be agreed upon by the Parties and approved by the Court, and shall not incur any charge for the receipt of this food.  Stipulation § IV.B.2.

### E.     Attorneys' Fees and Expenses and Class Representative Incentive Awards

Vita Coco will not oppose Class Counsel's application for a fee and expense award not to exceed a total of $750,000 in attorneys' fees and reasonable, actual out-of-pocket expenses, as set forth in the Stipulation, provided that:  (1) no more than $250,000 shall be requested to be paid within ten (10) days of the Court's entry of Judgment; and (2) the balance of any approved amount (up to a combined total of $750,000) shall be due on the first anniversary of the date the Court enters Judgment.  *See Id.* § VIII.A.  In the event the Judgment entered pursuant to this

settlement shall not become final or is ultimately overturned on appeal as set forth in the

Stipulation, Class Counsel and Additional Plaintiffs' Counsel shall return in full the amount of

attorneys' fees and expenses paid to them pursuant to this provision.  *Id*. § VIII.B.

Additionally, Vita Coco will not oppose Class Counsel's request that the Court approve Vita

Coco's payment of an incentive award of $2,000 each to Plaintiffs Fishbein, Garcia, Saldarriago,

and Marchewka.  *Id*. § VIII.D.   All fees and expenses awarded to Class Counsel and incentive

awards awarded to Plaintiffs, subject to the terms set forth above and further detailed in the

Stipulation, will be paid by Vita Coco in addition to the $1 million Cash Settlement Fund and

will therefore have no effect on the Cash Settlement Fund or the other relief provided by the

Stipulation.

### F.    Costs of Notice and Administration

Subject to the restrictions set forth in the side letter agreement between the Parties, Vita

Coco has agreed to pay the costs of class notice and claims administration up to $350,000,

including, *inter alia*, reimbursement and/or payment of the total costs reasonably and actually

incurred by the Class Action Settlement Administrator in connection with providing notice to

and locating Settlement Class Members, providing and processing Claim Forms, receiving

requests for exclusions, assisting Settlement Class Members with filing claims, and

administering claims.  *Id*. §§ V.C & IX.E.[3]

### G.    Release

As of the Effective Date, Plaintiffs and each Settlement Class Member who has not

validly excluded himself or herself from the Settlement Class pursuant to § VI.C.1 of the

Stipulation shall be deemed to have, and by operation of the Judgment shall have, fully, finally,

and forever released, relinquished, and discharged all Released Claims against the Released

---

[3] Upon the Court's request, the Parties shall make the side letter available for the Court's *in camera* review.

Persons.  *Id*. § VII.  In connection with the Released Claims, each Settlement Class Member

shall be deemed, as of the Effective Date, to have waived any and all provisions, rights, and

benefits conferred by § 1542 of the California Civil Code and any statute, rule, and legal doctrine

similar, comparable, or equivalent to California Civil Code § 1542, which reads as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

*Id*. § VIII.

### IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CONDITIONALLY CERTIFYING A SETTLEMENT CLASS

#### A.   <u>The Proposed Settlement Class, Class Representatives, and Class Counsel</u>

Plaintiffs request that the Court conditionally certify, under Federal Rules of Civil

Procedure 23(b)(3), the Settlement Class defined as follows:

> All persons or entities in the United States who made retail purchases of Vita Coco Products during the Settlement Class Period.  Excluded from the Settlement Class are:  (a) Vita Coco's employees, officers, directors, agents, and representatives; (b) those who purchased Vita Coco Products for the purpose of re-sale; (c) all federal judges who have presided over this case; and (d) all Persons who have been properly excluded from the Settlement Class.

*Id.* § II.25.

Plaintiffs also move the Court to designate the named Plaintiffs in this action as class

representatives and the firms of Labaton Sucharow LLP and Whatley Drake & Kallas, LLC as

Class Counsel.

#### B.   <u>The Requirements for Certification of a Settlement Class are Satisfied</u>

The Second Circuit has long acknowledged the propriety of certifying a class solely for

purposes of settlement.  *See*, *e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 262 & 270 (2d

Cir. 2006); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818

(1983) (superseded by statute as stated in *Glaser v. Cincinnati Milacron, Inc.*, 808 F.2d 285 (3d

Cir. 1986)); *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004).  When

presented with a proposed settlement, a court must determine whether the proposed settlement

class satisfies the requirements for class certification under Rule 23.  But in assessing those class

certification requirements, a court may properly consider that there will be no trial.  *See Amchem*

*Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-

only class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems . . . for the proposal is that there be no trial."); *Sullivan v. D.B.*

*Investments, Inc.,* 2011 U.S. App. LEXIS 25185, at * 71 (3d Cir. Dec. 20, 2011) ("the merits

inquiry is particularly unwarranted in the settlement context since a district court need not

envision the form that a trial would take").

C.      **The Proposed Settlement Class Satisfies Rule 23(a)**

A court may grant certification where, as here, the proposed settlement class satisfies the

four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as

one of the three subsections of Rule 23(b).  *See Weinberger*, 698 F.2d at 73.

1.      **The Settlement Class Is So Numerous That It Is Impracticable to**
        **Bring All Settlement Class Members Before the Court**

First, Rule 23(a) requires that the class be so numerous that joinder of all members would

be "impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d

Cir. 1993).  While no magic number exists for satisfying the numerosity requirement, and

Plaintiffs are not required to allege the exact number or identity of class members, the Second

Circuit has previously determined that numerosity is presumed at a figure of 40.  *See*

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is

presumed at a level of 40 members"); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 210

F.R.D. 476, 479 (S.D.N.Y. 2002) ("numbers in excess of forty generally satisfy the

requirement").

Here, the proposed Settlement Class consists of persons and entities in the United States

who made retail purchases of Vita Coco Products during the Settlement Class Period.  Based on

the tens of millions of units sold (*see* Carvalho Decl. at ¶ 2), there are many thousands of persons

and entities that fall within the Settlement Class definition, making joinder of these persons

impracticable.  Thus, the numerosity requirement is satisfied here.

### 2. Plaintiffs and the Settlement Class Share Common Legal and Factual Questions

Second, Rule 23(a) requires the existence of questions of law or fact common to the

class.  Fed. R. Civ. P. 23(a)(2).  Questions are common to the class if class members' claims

"depend upon a common contention" that is "of such a nature that it is capable of class wide

resolution – which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011).  The commonality element "'does not require an identity of claims

or facts among class members; instead, [t]he commonality requirement will be satisfied if the

named plaintiffs share at least one question of fact or law with the grievances of the prospective

class.'"  *Global Crossing*, 225 F.R.D. at 451 (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265

F.3d 178, 184 (3d Cir. 2001)).

Here, numerous common questions exist with respect to the Settlement Class and

therefore the commonality requirement is easily satisfied.  These common questions include,

*inter alia*, whether:  (i) Defendant's alleged nationwide practice of misleading consumers who

purchase Vita Coco Products violates applicable consumer protection statutes; (ii) Defendant

engaged in unlawful, unfair, misleading, or deceptive business acts or practices; (iii) Defendant

engaged in consumer fraud, deceptive trade practices or other unlawful acts; (iv) Defendant

violated express warranties; (v) Defendant made negligent misrepresentations; and (vi)

Defendant was unjustly enriched.  The overarching allegation in the Amended Complaint is that

Vita Coco falsely marketed the benefits of consuming Vita Coco Products.  Proof of the false

and misleading marketing is common to all members of the Settlement Class.

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See* Fed. R. Civ.

P. 23(a)(3).  The typicality requirement is satisfied when "each class member's claim arises from

the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.

1992).  Indeed, when "the same [alleged] unlawful conduct was directed at or affected both the

named plaintiffs and the class sought to be represented, the typicality requirement is usually met

irrespective of minor variations in the fact patterns underlying individual claims."  *Global

Crossing,* 225 F.R.D. at 452 (citation and internal quotations omitted).

Here, the claims of the representative Plaintiffs are typical when compared to those held

by the other members of the Settlement Class.  Plaintiffs have alleged that Vita Coco

misrepresented the health benefits and nutritional contents of Vita Coco Products.  Such claims

of the representative Plaintiffs, like those of the other members of the Settlement Class, arise out

of the same alleged misconduct by the same Defendant and are based on the same legal theories.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent

the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Adequacy of representation is satisfied where,

"the proposed class representatives have no conflicts of interest with other members of the class." *Attenborough v. Construction and General Building Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).

Here, there is no sign of any conflicts of interests between the Plaintiffs who seek to serve a Class Representatives and the Settlement Class Members. Plaintiffs all purchased Vita Coco Products from Defendant, and, like the rest of the Settlement Class Members, Plaintiffs seek to recover economic damages arising from their purchases. As discussed above, each Settlement Class Member will benefit from the injunctive relief provisions in the Stipulation and each is entitled to monetary relief. To the extent there are differences in the form of compensation available to Settlement Class Members, those differences apply equally according to objective criteria to reflect variations in the Settlement Class Members' ability to prove that they purchased a Vita Coco Product.

**D.      The Proposed Settlement Satisfies Rule 23(b)**

Once the requirements of Rule 23(a) are met, Plaintiffs must also show that the proposed Settlement Class satisfies one of the requirements of Rule 23(b). Under Rule 23(b)(3), Plaintiffs must demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members." Fed. R. Civ. P. 23(b)(3). Plaintiffs must show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

**1.      Common Questions of Law and Fact Predominate**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to

individualized proof." *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1252 (2d Cir. 2002).  The

Supreme Court has noted that the predominance test generally is "readily met in certain cases

alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625.  The predominance factor is

easily satisfied here because liability can be determined on a class-wide basis.  All members of

the Settlement Class are unified by common factual allegations arising from Vita Coco's

misrepresentations concerning the health benefits and nutritional contents of its Vita Coco

Products.  As such, the Court should find that the predominance requirement is satisfied.

### 2.     Class Resolution of this Action is Superior

In addition, class resolution of this action is superior to other available methods for the

fair and efficient adjudication of this controversy.  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) sets

forth a non-exclusive list of relevant factors, including whether individual class members wish to

bring, or have already bought individual class actions and the desirability of concentrating the

litigation of the claims in the particular forum.  *Id.*  Here, it is in the interest of Settlement Class

Members to proceed with this action as a class action.  No single plaintiff has any incentive to

bring suit to recover for Vita Coco's alleged wrongdoings.  And, the action arises out of an

alleged common course of conduct by Vita Coco that is uniform across the Settlement Class.  It

is therefore well-suited for aggregate treatment.  As the Supreme Court recognized in *Amchem*:

> 'The policy at the very core of the class action mechanism is to
> overcome the problem that small recoveries do not provide the
> incentive for any individual to bring a solo action prosecuting his
> or her rights.  A class action solves this problem by aggregating the
> relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.'

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  Therefore, the Court should certify the Settlement Class because all requirements of Rule 23(a) and Rule 23(b)(3) are satisfied in this settlement context.

### V.  THE COURT SHOULD APPOINT LABATON SUCHAROW AND WHATLEY DRAKE AS CLASS COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)

Rule 23(g) provides that "a court that certifies a class must appoint class counsel."  In appointing class counsel, the Court must consider:  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  For the reasons set forth in the Persky Declaration and the attached firm resumes of Labaton Sucharow LLP ("Labaton Sucharow") and Whatley, Drake & Kallas LLC ("Whatley Drake"), the Court should appoint Labaton Sucharow and Whatley Drake as Class Counsel.

### VI.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

#### A.  The Settlement of Complex Litigation Is Favored

It is well-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  Indeed, it is the policy of the law to generally encourage settlements.  *See  Global Crossing* 225 F.R.D.  at 455 ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.").  This principle is firmly established with respect to class actions within the Second Circuit.  *See, e.g.*, *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) ("it is axiomatic that the law encourages settlement of disputes"); *see*

*also Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354-55 (E.D.N.Y. 2006) (noting that class

actions are amenable to settlement "because of the difficulties of proof, the uncertainties of the

outcome, and the typical length of the litigation").

>    **B.       The Standard for Preliminary Approval**

When parties to a class action seek to settle, they must proceed before the court in two

steps – first, they must seek preliminary approval of the proposed settlement as well as

conditional certification of the proposed settlement class and then, should such preliminary

approval and conditional class certification be granted, they must provide notice to the settlement

class and appear at a fairness hearing after which the court may grant final approval to the

settlement.  *See Manual* § 21.633; *NASDAQ I*, 176 F.R.D. at 102.  Because the first step of this

process is only "preliminary," the standards for preliminary approval are less exacting than those

applied for final approval.  *See Karvaly v. eBay Inc*., 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("[i]n

the context of a motion for preliminary approval of a class action settlement, the standards are

not so stringent as those applied when the parties seek final approval").

Preliminary approval of a proposed settlement is appropriate where "it is the product of

serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

grant preferential treatment to class representatives or segments of the class and falls within the

range of possible approval."  *NASDAQ I*, 176 F.R.D. at 102 (citing *Manual for Complex

Litigation*, Third, § 30.41 (West 1995)).

In conducting this inquiry, a court considers both the negotiating process leading up to

the settlement and the settlement's substantive terms.  *Global Crossing*, 225 F.R.D. at 455.  A

court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to

justify notice to those affected and an opportunity to be heard."  *NASDAQ I,* 176 F.R.D. at 102

(citations omitted).

The negotiations here were conducted by experienced counsel on both sides at arm's length. *See* Persky Decl. ¶ 2.  Class Counsel were well-informed of the material facts and the negotiations were non-collusive.  *Id.* ¶.  Furthermore, the relief offered to the Settlement Class not only provides cash or product recovery to the Settlement Class, but also incorporates provisions designed to help avoid the recurrence of such incidents in the future and makes this settlement fall well within the range of possible approval.  Based upon these facts, preliminary approval is warranted and, as will be demonstrated in detail at the final fairness hearing, this settlement is a "fair, reasonable, and adequate" settlement of the class claims.  *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds by *Goldberger v. Integrated Res.*, 209 F.3d 43 (2d Cir. 2000)).[4]

## C.     Preliminary Approval of the Proposed Settlement Should be Granted

### 1.     The Proposed Settlement Is the Result of Arm's-Length Negotiations Conducted by Highly Experienced Counsel.

Pursuant to the factors detailed above, the proposed settlement should be preliminarily approved.  The process that led to this proposed settlement was fairly conducted by highly-qualified counsel who sought to obtain the best possible result for their clients and the Settlement Class.  When counsel engage in an arm's-length negotiation that results in a settlement, the settlement is entitled to a presumption of fairness.  *See McReynolds v. Richards–Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (The Second Circuit has recognized "[a] presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"

---

[4] The Second Circuit has articulated  nine relevant factors that courts consider in evaluating a settlement's substantive terms at the time of final approval:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Grinnell*, 495 F.2d at 463.

(quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 82-83 (S.D.N.Y. 2007) (same); *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II"*) ("So long as the integrity of the arm's length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement.").

Furthermore, when the settlement that results from such negotiations is being championed by experienced and informed counsel, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *See In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995) ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement." (citations omitted)) (vacated and remanded, in part, by *In re Joint. E. & S. Dists. Asbestos Litig*, 78 F.3d 764 (2d Cir. 1996); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating that "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation). Here, counsel for the Parties are highly capable and have the requisite qualifications and experience to handle this litigation. They have extensive experience leading and litigating complex class actions nationwide and are thoroughly familiar with the factual and legal issues involved in this action. The process that led to this settlement confirms that the initial presumption of fairness is correct.

The basic terms of the Stipulation here were negotiated over a period of four months in a process that involved the extensive in-person and telephonic participation of Judge Kathleen Roberts of JAMS, as well as in-person meetings and numerous telephone conferences between Class Counsel and Defense Counsel. *See* Persky Decl. ¶ 2. The discussions were meaningful

and informed as Class Counsel took steps to ensure that they had all of the necessary information

to advocate for a fair settlement that served the best interests of the Settlement Class.  *Id*.  Class

Counsel analyzed and evaluated the contested legal and factual issues posed by the litigation so

that adequate demands and accurate evaluation of Vita Coco's positions could be made.  *See id.*

Thus, Class Counsel were well-informed of the facts of the case and the strength of the claims

asserted when the terms of the Stipulation were negotiated.  *See Global Crossing*, 225 F.R.D. at

458.

In short, Plaintiffs respectfully submit that the proposed Stipulation meets the standards

for preliminary approval.  It was the product of arm's length negotiations by counsel with

experience in leading consumer class actions; it was conducted under the guidance of an

experienced and well-respected mediator; it was entered into following a thorough investigation;

and it contains no obvious deficiencies.

### 2. The Proposed Settlement Falls Within the Range of Possible Approval

To preliminarily approve this settlement, the court must decide that the proposed

settlement falls within the range of settlements that could *possibly* be approved as "fair, adequate

and reasonable."  *NASDAQ I*, 176 F.R.D. at 102.  The settlement here contains both a cash

payment and non-cash benefits.  These benefits have been obtained at a stage in the litigation

where the non-monetary benefits will be helpful and serve to avoid much of the risk that is

inherent in litigating complex class actions.  *See In re Initial Public Offering Sec. Litig.*, 260

F.R.D. 81, 118 (S.D.N.Y. 2009).

Indeed, continuing this litigation against Vita Coco would entail a lengthy and highly

expensive legal battle, involving complex legal and factual issues where motions would be

vigorously contested.  Vita Coco would raise substantial defenses and legal challenges to both

the certification of Plaintiffs' claims as a class, as well as to their underlying merits, and there is

a risk that no class would be certified, or if certified, that the class could not be maintained

throughout a trial.  Vita Coco would have asserted defenses making the ultimate outcome

uncertain for both Parties because it would turn on questions of proof, many of which would be

the subject of complicated expert opinions, particularly with regard to damages.  *See NASDAQ*

*II*, 187 F.R.D. at 475-76.  Given the uncertainty present at all stages of the litigation, "[a] very

large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the

bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Based upon the foregoing, the Stipulation is well within the *possible* range of approval as

a "fair, reasonable, and adequate" settlement of the Settlement Class's claims.  *See Grinnell,* 495

F.2d at 463.  Under these circumstances and considering these benefits, the proposed settlement

not only falls well within the range of possible approval but also represents an excellent result for

members of the Settlement Class.

## VII.   THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of the proposed settlement is granted, notice must be directed

to the Settlement Class Members.  For class actions certified under Rule 23(b)(3), "the court

must direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and

requires the Court to "direct notice in a reasonable manner to all class members who would be

bound by a proposed settlement, voluntary dismissal, or compromise."  *Id*.  The Second Circuit

has stated the following regarding the standard for notice:

> The standard for the adequacy of a settlement notice in a class
> action under either the Due Process Clause or the Federal Rules is
> measured by reasonableness . . . the settlement notice must fairly
> apprise the prospective members of the class of the terms of the

21

> proposed settlement and of the options that are open to them in
> connection with the proceedings.  Notice is adequate if it may be
> understood by the average class member.

*Wal-Mart Stores, Inc.*, 396 F.3d at 113-14 (internal citations omitted).

Moreover, when a court is presented with a settlement class, the class-certification notice and notice of settlement may be combined in the same notice.  *Manual* § 21.633 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice will allow the Settlement Class Members to decide whether to opt out of or participate in the class, and/or to object to the settlement and argue against final approval by the Court.  *See id.* The proposed notice program here, which informs Settlement Class Members of their rights and includes a comprehensive plan for delivery of notice by, *inter alia*, email, U.S. mail, a settlement website, publication, various forms of internet-based advertisements, and newswire services, constitutes the best practicable notice under the circumstances of this case.

### A. The Notice Program Will Provide Reasonable Notice, Including Direct Notice, to All Identifiable Settlement Class Members

As provided in the Stipulation, the parties have agreed to a comprehensive notice program to ensure the best notice practicable is directed to the Settlement Class Members.  To facilitate the notice process, the parties have agreed to request that the Court approve Garden City Group[5], an experienced and highly qualified settlement administrator, as the Class Action Settlement Administrator to assist and provide professional guidance in the implementation of the notice program, as well as the claims filing process and other aspects of the settlement administration.

Given the experience and resources of Garden City Group, the Parties respectfully request that the Court approve Garden City Group as the Class Action Settlement Administrator.

---

[5] A copy of the resume of Garden City Group is attached to the Persky Decl. as Exhibit 4.

The Parties have agreed to the form of the long-form and publication notices, as set forth in the exhibits to the Stipulation, and Vita Coco will pay all costs associated with the Class Action Settlement Administrator up to $350,000, including costs of providing notice to Settlement Class Members and processing claims, subject to the restrictions set forth in a separate side letter agreement between the Parties, which the Parties will submit to the Court *in camera* upon request.

The specific elements of the Notice Program are as follows:

**1.     Direct Notice Will be Provided to Settlement Class Members for Whom Records Provide Address Information**

The notice program provides that notice and a Claim Form will be mailed or emailed to all Settlement Class Members that Vita Coco has  information for, within ten (10) days following the date the Court issues an Order granting preliminary approval.  The notice will direct Settlement Class Members to the Settlement Website and the toll-free telephone number.

**2.     Notice Will be Posted on a Designated Website**

The Notice Program provides for an official settlement website, www.vitacocosettlement.com, which will contain:  (1) a summary of the settlement; (2) a list of frequently asked questions and answers; (3) key deadlines; (4) downloadable copies of Court orders and other pleadings pertaining to the settlement; (5) a downloadable copy of the Stipulation; (6) a downloadable copy of the notice and Claim Form; (7) information about how to contact the Class Action Settlement Administrator; and (8) other information required for Settlement Class Members to file a claim.

### 3.      Toll-Free Telephone Support

A toll-free telephone support system will be established that will provide Settlement Class Members with:  (1) general information about the settlement; (2) frequently asked questions and answers; and (3) the ability to request a notice and Claim Form.

### 4.      Notice will be Published in USA Today

Notice will be provided by a 1/8 page advertisement in USA Today within ten (10) days of the date of Preliminary Approval, or as soon as commercially practicable thereafter.  The Notice will be published one time in the Monday through Thursday National Edition of USA Today.  For the Settlement Class Members who will receive notice by publication, the Notice will direct Settlement Class Members to the Settlement Website (where they can download the notice and Claim Form; and request a notice and Claim Form via U.S. Mail, e-mail or via the toll-free telephone number).

### 5.      PR Newswire Press Releases

A press release targeting all 50 states will also be sent once via the PR Newswire's U.S.1 and Hispanic newslines within ten (10) days of the date of Preliminary Approval, or as soon as commercially practicable thereafter.  The U.S.1 release will be issued broadly to more than 11,200 media outlets, including newspapers, magazines, national wire services, television and radio broadcast media, web sites, online databases, internet networks and social networking media in all 50 states.  The Hispanic newsline reaches over 1,200 media outlets nationally.  In addition, a blog release will be sent once to over 300 blogs selected by the Class Action Settlement Administrator covering fitness and exercise, dieting, nutrition, jogging/running and sports.

### 6.      Internet Advertisements

For the six-week period following provision of the notice specified in Paragraphs 1, 4 and 5 of the Notice Program, internet advertisements will be run targeting potential Settlement Class Members through services provided by Yahoo.com, Amazon.com, the Online Spanish Network and Facebook.

### 7.      Mobile Phone Advertisements

For the four-week period following provision of the notice specified in Paragraphs 1, 4 and 5 of the Notice Program, mobile phone advertisements will be also run using Yahoo's mobile advertising networks.

### 8.      Vita Coco's Website

Prior to the notice specified in Paragraphs 1, 4 and 5 being provided, a link will be established on Vita Coco's website that will connect directly to the Settlement Website and that will remain on Vita Coco's website until the Final Approval Hearing.

### 9.      Vita Coco Facebook Page

Prior to the notice specified in Paragraphs 1, 4 and 5 being provided, a link will be established on the Vita Coco Facebook page that will connect directly to the Settlement Website and that will remain on the Vita Coco Facebook page until the Final Approval Hearing.  Vita Coco will also post a newsfeed about the settlement on its Facebook page.

### 10.      Vita Coco's Twitter Account

Once during the first week following the period after the notice specified in Paragraphs 1, 4 and 5 is provided and, again, during the third week following the period after the notice specified in Paragraphs 1, 4 and 5 is provided, Vita Coco will provide a link to the Settlement Website via "Tweets" sent via its Twitter account.  The specific timing and language of these "Tweets" will be mutually agreed upon by the Parties.

### 11.   Class Counsel Press Release

At their option, Class Counsel may issue a press release regarding the settlement.

### 12.   Class Counsel's Websites

At their option, Class Counsel may provide a direct link to the Settlement Website on

their websites.

### B.   The Proposed Notice Adequately Informs Settlement Class Members of the Proposed Class Action Settlement

As required by Rule 23(c)(2)(B), this notice "concisely and clearly state[s] in plain, easily

understood language:"  (1) the nature of the action; (2) the Settlement Class definition; (3) the

class claims, issues, or defenses; (4) that if a Settlement Class Member desires, he may enter an

appearance through counsel; (5) that the Court will exclude from the Settlement Class any

member who requests exclusion, stating when and how members may elect to be excluded; and

(6) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3).

*See* Ex. A to Stipulation.

Finally, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees

must be "directed to class members in a reasonable manner."  For settlement classes under Rule

23(e), "'notice of class counsel's fees motion should be combined with notice of the proposed

settlement.'"  *Manual* § 21.722 (internal citations omitted).  The Parties' proposed notice in this

case apprises the Settlement Class Members of Class Counsel's fee request, which will be

presented at final approval.  (*See* Ex. B to Stipulation.)

### C.   The Notice Adequately Explains the Procedures to Request Exclusion or to Object

Notice of a class action settlement should alert class members of the procedures to

request exclusion or object.  *See Manual* §§ 21.312, 21.633.  The proposed notice here notifies

Settlement Class Members of their right to exclude themselves from the Settlement Class by

sending a written request for exclusion to the Class Action Settlement Administrator.  The notice also advises Settlement Class Members that the request must contain:  (1) the original signature of the Settlement Class Member; (2) the Settlement Class Member's name, current address, and current telephone number; (3) a statement that the Settlement Class Member is a member of the Settlement Class; and (4) a specific statement that the Settlement Class Member wants to be excluded from the Settlement Class.  It also informs Settlement Class Members that a request for exclusion must be postmarked no later than the date established by the Court.

In addition, the notice provides that Settlement Class Members who wish to:  (a) object to the proposed settlement; (b) object to the request by Class Counsel for attorneys' fees and costs; and/or (c) appear in person or by counsel at the Final Approval Hearing and be heard, must first mail objection letters to Plaintiffs' Class Counsel Vita Coco's Counsel, and file the same objection letters with the Court.  Objection letters must: (1) be mailed and postmarked, and filed with the Court, by the date established by the Court; (2) include the Settlement Class Member's name, current postal address, and current telephone number; (3) provide proof of purchase of a Vita Coco Product or a statement sworn to under penalty of perjury, pursuant to 28 U.S.C. § 1746, attesting to the fact that the Claimant purchased one or more Vita Coco Products during the Settlement Class Period; and (4) state the reasons for objecting to the settlement.  Finally, the written objection must contain the original signature of the Settlement Class Member and indicate whether the Settlement Class Member or his lawyer intends to appear at the Final Approval Hearing.  All of these requirements for a proper objection are set forth in the notice. Moreover, the notice alerts a Settlement Class Member that his objections to the settlement will only be considered by the Court if the member follows the procedures set forth in the notice.

Consequently, the notice that will be provided to the Settlement Class Members under the proposed Notice Program fully apprises the Settlement Class Members of the procedures to request exclusion or to object.

**D.     The Notice Adequately Informs the Settlement
        Class Members of the Final Approval Hearing**

Notice of a Final Approval Hearing should inform the class that they can present their views on the settlement, as well as present arguments for and against the settlement, when the Court addresses the fairness, reasonableness, and adequacy of a proposed settlement.  *Manual* §§ 21.633, 21.634.

The Parties' proposed form of notice informs putative Settlement Class Members of the details of the Final Approval Hearing.  The notice provides the date to be set for the Final Approval Hearing before this Court and alerts Settlement Class Members that if they file timely, written objections and comply with the requirements set forth in the notices, they may appear at the Final Fairness Hearing in person or by counsel and be heard.  *See* Ex. B to Stipulation. Finally, the notice addresses Class Counsel's request for attorneys' fees and costs.    The notice also provides a toll-free number that a Settlement Class Member can call for more information. That toll-free number will be administered by the Class Action Settlement Administrator appointed by this Court.  For the foregoing reasons, the proposed notice program adequately notifies the Settlement Class Members of the Final Approval Hearing to be held before the Court.  *Id*,

**E.     The Notice Program Should Be Approved**

The Plaintiffs respectfully submit that the Court, after reviewing the notice and the proposed Notice Program and the specific terms of the Notice Program, should find that these procedures for notice established in the Stipulation, and the procedures for Settlement Class

Members to request exclusion from the Settlement Class, are adequate and reasonable, meet the requirements of Federal Rule of Civil Procedure 23, and constitute the best notice practicable and most reasonable notice under the circumstances.

## VIII.   PROPOSED TIMETABLE

The proposed Preliminary Approval Order and proposed Notice Program set forth a procedure and schedule for disseminating notice to the Settlement Class and final approval of the Stipulation.  Class Counsel propose the following schedule:

a.   Notice of the Stipulation of Settlement shall be served by Defendant, pursuant to 28 U.S.C. § 1715, within ten (10) days after the Stipulation of Settlement and Motion for Preliminary Approval are filed in this Court, upon the appropriate Federal official and the appropriate State official of each state or territory in which a Settlement Class Member resides.

b.   Notice and Claim Form to be mailed and posted on the internet within ten (10) days following the date of the Preliminary Approval Order ("Notice Mailing Date") (in a form substantially similar to Exhibit B).

c.   Notice will be published once in USA today within ten (10) days of the date of Preliminary Approval, or as soon as commercially practicable thereafter.

d.   Press release to be distributed once by PR Newswire's U.S.1 and Hispanic newslines within ten (10) days of the date of Preliminary Approval, or as soon as commercially practicable thereafter.

e.   The Class Action Settlement Administrator shall file with the Court proof of compliance with the Notice Program no later than seven (7) business days prior to the Final Approval Hearing.

f.   A Final Approval Hearing shall be scheduled within approximately one hundred twenty (120) days following the date of the Preliminary Approval Order, or as the Court's schedule permits.

g.   All papers in support of final approval of the Stipulation and in support of Plaintiffs' application for an award of attorneys' fees and expenses as well as Plaintiffs' application for incentive awards for the class representatives shall be filed forty-five (45) days prior to the Final Approval Hearing.

h.   Any requests for exclusion from the Settlement Class must be postmarked not less than thirty (30) days prior to the Final Approval Hearing.

    i.  Any objections to the Stipulation must be filed with the Court and served on the Parties' counsel not less than thirty (30) days prior to the Final Approval Hearing.

    j.  All completed Claim Forms must be postmarked or submitted online within ninety (90) days after the Notice Mailing Date.

## IX. CONCLUSION

As explained in detail above, this Settlement Class meets the Rule 23 requirements for class certification; the proposed settlement fairly resolves the putative Settlement Class Members' claims; and the proposed Notice Program constitutes the most reasonable notice under the circumstances.  Consequently, Plaintiffs respectfully move this Court to issue an Order:  (1) conditionally certifying the Settlement Class; (2) granting preliminary approval of the proposed settlement; (3) approving the proposed Notice Program and directing that it be implemented; (4) appointing Plaintiffs Fishbein, Garcia, Saldarriago, and Marchewka as class representatives and Labaton Sucharow LLP and Whatley Drake & Kallas LLC as Class Counsel; and (5) appointing Garden City Group as the Class Action Settlement Administrator.

Dated: February 7, 2012

         Respectfully submitted,

         **LABATON SUCHAROW LLP**

           /s/ Bernard Persky
         Bernard Persky
         Hollis L. Salzman
         William V. Reiss
         140 Broadway, 34th Floor
         New York, NY 10005
         Tel.:  212-907-0700
         Fax:  212-818-0477
         bpersky@labaton.com
         hsalzman@labaton.com
         wreiss@labaton.com

**WHATLEY, DRAKE & KALLAS, LLC**
Joe R. Whatley, Jr.
Patrick J. Sheehan
380 Madison Avenue, 23rd Floor
New York, NY 10017
Tel.:  212-447-7070
Fax:  212-447-7077
jwhatley@wdklaw.com
psheehan@wdklaw.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*